IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MATTHEW RINAUDO and MIZKIF ENTERPRISES, LLC, | § § § § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Case No. 1:25-CV-01773-RP |
| EMILY BETH SCHUNK, ZACK HOYT, OTK MEDIA INC. d/b/a ONE TRUE KING, MYTHIC TALENT MANAGEMENT INC. and KING GAMING LABS, INC., | | |
| Defendants. | | |

**DEFENDANTS OTK, MYTHIC, AND KING'S OPPOSED MOTION
TO COMPEL ARBITRATION AND STAY LITIGATION**

Defendants OTK Media, Inc. ("OTK"), Mythic Talent Management Inc. ("Mythic"), and King Gaming Labs, Inc. ("King") (collectively, the "Moving Defendants"), by their undersigned counsel, respectfully move for an Order compelling arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Moving Defendants seek to compel arbitration of the claims (Count 3) asserted by plaintiffs Matthew Rinaudo and Mizkif Enterprises, LLC (collectively, "Plaintiffs") against Mythic and to stay Plaintiffs' remaining claims (Counts 1 and 3) against the Moving Defendants pending a decision on the instant Motion and, if applicable, issuance of a final arbitration award.[1]

---

[1] The Moving Defendants expressly reserve all defenses, including the right to file a motion to dismiss, pending the Court's determination of arbitrability.

## PRELIMINARY STATEMENT

This lawsuit is the predictable culmination of Plaintiffs' effort to avoid the consequences of their own contractual commitments with the Moving Defendants. Plaintiffs entered into a valid, enforceable written agreement with Mythic Talent Management Inc. on January 2, 2023 (the "Representation Agreement"), which contains a mandatory arbitration clause broadly requiring that all disputes arising out of or relating to Mythic's representation be resolved in binding JAMS arbitration. Plaintiffs now seek to litigate those very disputes in this Court, but the Representation Agreement's arbitration clause is plainly enforceable under the Federal Arbitration Act ("FAA").

Rather than honor their agreement to arbitrate, Plaintiffs sued not only Mythic, but also OTK and King, even though the claims (Counts 1 and 3) against these entities arise from the same core contractual relationship and some of the same alleged misconduct (Count 3) that is subject to arbitration. Plaintiffs' effort to obtain declaratory relief while withholding the governing contract underscores the gamesmanship at the heart of this action.

Plaintiffs' relationship with OTK and King is governed by a separate Owners Agreement, which authorizes OTK and its affiliates, including Mythic, to take action in response to breaches of Plaintiffs' contractual obligations, including breaches of the Representation Agreement. The actions that Plaintiffs challenge were taken pursuant to the Owners Agreement and are tied to Plaintiffs' alleged breach of the Representation Agreement, as well as a course of other recent misconduct. Those issues are intertwined with, and dependent upon, the same questions that must be resolved in the arbitration against Mythic.

Allowing Plaintiffs to litigate their claims against OTK and King (Counts 1 and 3) while arbitrating their claims against Mythic (Count 3) would require parallel proceedings addressing overlapping contractual duties, evidence, and allegations of misconduct, creating a substantial risk

of inconsistent rulings. Because the arbitration will address issues that may prove dispositive of Plaintiffs' claims against OTK and King, the FAA requires that those claims be stayed pending resolution of the arbitration. The FAA does not permit Plaintiffs to evade their agreement to arbitrate by recasting arbitrable disputes as declaratory judgment claims. For the reasons set forth below, Plaintiffs' claims (Count 3) against Mythic must be compelled to arbitration, and the claims (Counts 1 and 3) against OTK and King be stayed.

## LEGAL STANDARD

### A. The FAA Establishes a Strong Federal Policy Favoring Arbitration.

The Federal Arbitration Act ("FAA") "'reflects an emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Under the FAA, parties may agree that an arbitrator—rather than a court—will resolve disputes arising out of their contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has repeatedly emphasized, courts must place arbitration agreements "upon the same footing as other contracts." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)). As such, the FAA "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

### B. Courts Compel Arbitration Where a Valid Agreement Exists and the Dispute Falls Within Its Scope.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into any arbitration agreement at all."

3

*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only — did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017) (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201-202 (5th Cir. 2016)). To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citation omitted).

Second, the Court determines whether the parties' dispute falls within the scope of that agreement. *IQ Prods.*, 871 F.3d at 348. The Court must also consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 628). Unless the agreement contains a valid delegation clause assigning this question to the arbitrator, the Court resolves the scope inquiry. *Kubala*, 830 F.3d at 202. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commun. Workers of Am.*, 475 U.S. 643, 650 (1986).

### C. Where Claims Are Referable to Arbitration, the FAA Provides That the Court "Shall" Stay the Action.

Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court "**shall** on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. *Smith v. Spizzirri*, 601 U.S. 472, 473–74 (2024) (emphasis added), citing 9 U.S.C. § 3. The use of the word "shall" "creates an obligation impervious to judicial discretion." *Id.* at 472. Additionally, where claims against non-signatory defendants are inextricably intertwined with arbitrable claims, or where their resolution depends upon interpreting the contract containing the arbitration clause,

courts routinely stay those related claims to avoid inconsistent results and inefficiency. *See e.g., Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999).

## ARGUMENT

**A.  The Court Should Compel Arbitration of Plaintiffs' Claims (Count 3) Against Mythic and Stay the Remaining Claims (Claims 1 and 3) Against the Moving Defendants Pending a Final Arbitration Award.**

**1.  Plaintiffs and Mythic Entered Into a Valid Contract Containing a Binding Arbitration Clause.**

The preliminary inquiry on a motion to compel arbitration under the FAA is whether the parties formed a valid agreement to arbitrate; a question governed by ordinary state-law principles of contract formation. *Kubala*, 830 F.3d at 202. Here, the parties expressly agreed that the Representation Agreement "shall be governed and construed in accordance with the laws of the State of Texas without regard to its conflict of law provisions." *See* Exhibit A, Declaration of Steven L. Eychner; Exhibit B, Affidavit of Mohammad Arabikatbi, Ex. 3. Under Texas law, the elements of a valid and binding contract include: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the term; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Mendivil v. Zanios Foods, Inc.*, 357 S.W.3d 827, 830–31 (Tex. App. 2012) (citing *Cessna Aircraft Co. v. Aircraft Network*, L.L.C., 213 S.W.3d 455, 465 (Tex. App. 2006)).

The Representation Agreement is a written letter agreement dated January 2, 2023, executed by Rinaudo on behalf of Plaintiffs, and electronically delivered to all parties via DocuSign upon its full execution. *See* Eychner Decl. ¶ 7; Arabikatbi Aff., ¶ 27-28; Ex. 3. As evidenced by Plaintiffs' signature on the Representation Agreement, Plaintiffs do not and cannot dispute that they entered into this agreement, nor can Plaintiffs avoid the Texas rule that a party

who signs a contract is conclusively presumed to have read and understood all of its provisions, including the Arbitration Clause. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d at 90 (Tex. 1996). Indeed, Plaintiffs' own Complaint seeks declaratory relief concerning rights and obligations that arise solely from that agreement. Having invoked the Representation Agreement as the basis for their claims, Plaintiffs cannot now avoid its arbitration provision.

Rather than identify or attach the Representation Agreement to their Complaint, however, Plaintiffs attempt to sidestep it by referencing the agreement only indirectly through Exhibit A to the Complaint. Exhibit A to the Complaint is OTK's October 24, 2025 "Second Notice of Termination and Repurchase – Demand for Repayment" addressed to Rinaudo (the "Second Notice"), which sets forth OTK's exercise of rights under the Owners Agreement based, in part, on Plaintiffs' alleged breach of the Representation Agreement. Plaintiffs' claims (Counts 1 and 3) against OTK and King expressly challenge actions taken pursuant to the Owners Agreement as set forth in the Second Notice. In doing so, the Complaint necessarily acknowledges the existence and operative effect of the Representation Agreement and its alleged breach, while omitting any reference to the Arbitration Clause that governs disputes arising from Mythic's representation of Plaintiffs and, in turn, mandates arbitration of Plaintiffs' claims (Count 3) against Mythic and a stay of the related claims (Counts 1 and 3) against the other Moving Defendants.

The Representation Agreement is an exclusive representation agreement, providing Mythic with the exclusive right to "manage, develop, negotiate, organize, and administer all income producing opportunities and activities available to [Plaintiffs] within and related to the digital media, gaming, content creation and entertainment industries." *See* Arabikatbi Aff., Ex. 3. The consideration under the Representation Agreement is a straightforward commission-based fee (the "Management Fees") paid to Mythic by Plaintiffs in exchange for its services to Plaintiffs. The

6

Representation Agreement contains a broad and unambiguous Arbitration Clause, which provides, in relevant part:

> All disputes and controversies of every kind and nature whatsoever between Mythic and Client arising out of, or in connection with, Mythic's representation of Client (including without limitation commission disputes) shall be finally determined by binding arbitration conducted in accordance with the Streamlined Arbitration Rules and Procedures of JAMS.

Arabikatbi Aff., Ex. 3.

Accordingly, under well-settled Texas law and the FAA, there can be no serious dispute that Plaintiffs and Mythic entered into a valid and enforceable agreement to arbitrate. The Moving Defendants have met the first requirement for showing that this Court should compel arbitration. *Kubala*, 830 F.3d at 201.

### 2. The Arbitration Clause Broadly Covers All Disputes Arising from Mythic's Representation, Including Plaintiffs' Claims Here.

The plain text of the Arbitration Clause leaves no doubt about its breadth. It requires arbitration of "all disputes and controversies of every kind and nature whatsoever" arising out of the Representation Agreement or Mythic's representation of Plaintiffs. The Fifth Circuit has repeatedly held that arbitration clauses using this "arising out of" and "all disputes" language are broad in scope and necessarily encompass claims seeking declaratory relief. *See The Rice Co. (Suisse) v. Precious Flowers*, 523 F.3d 528, 532 (5th Cir. 2008); *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993); *Explo v. S. Nat. Gas Co.*, 788 F.2d 1096, 1098–99 (5th Cir. 1986); *Sedco v. Pemex*, 767 F.2d 1140, 1144–45 (5th Cir. 1985). This conclusion is reinforced by the FAA, which expressly validates arbitration agreements covering controversies "arising out of" a contract. 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing controversy *arising out of* ... a contract ... shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract." (emphasis added)).

Because the Arbitration Clause uses both "all disputes" and "arising out of" language, it is treated as a broad clause under controlling Supreme Court and Fifth Circuit authority, and the already strong presumption in favor of arbitration applies with full force. *See AT&T Techs.*, 475 U.S. at 650. The Arbitration Clause also expressly identifies commission disputes as subject to binding arbitration. Plaintiffs themselves acknowledge that their dispute with Mythic concerns commissions and Management Fees. Compl. ¶ 22; 44. As such, their claims (Count 3) fall squarely within the scope of the Arbitration Clause. *See Batty v. Experian Info. Sols., Inc.*, No. 3:20-CV-1716-K, 2020 WL 10817762 at *2 (N.D. Tex. Oct. 7, 2020) (granting motion to compel arbitration where claims fell "squarely within the broad scope of the arbitration agreement as they relate to the relationship between [the parties] which the arbitration agreement specifically encompasses").

To the extent Plaintiffs contend there is any question about scope, the FAA forecloses it, as courts must resolve such questions in favor of arbitration. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Brewer v. Fujitsu America, Inc.*, No. A:12-CV-327-JRN, 2012 WL 12850263 at *1 (W.D. Tex. Oct. 9, 2012) (granting motion to compel arbitration). As the Honorable Justice James R. Nowlin of this Court explained in *Brewer*:

> District courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" and all "doubts should be resolved in favor of coverage." By its terms, the FAA "*leaves no place for the exercise of discretion by a district court*, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed."

*Id*. at 1 (internal citations omitted).

Given the breadth of the Arbitration Clause and the FAA's presumption in favor of

arbitration, there is no basis on which Plaintiffs could satisfy their heavy burden to establish "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650. Accordingly, Plaintiffs' claims (Count 3) against Mythic are squarely within the scope of the Arbitration Clause, and the Moving Defendants have met the second requirement for showing that this Court should compel arbitration. *Kubala*, 830 F.3d at 201.

### 3. The Court Should Compel Arbitration Because the FAA Presumes Arbitrability and Requires Enforcement of Valid Arbitration Clauses.

Even if Plaintiffs were to attempt to manufacture ambiguity concerning the scope of the Arbitration Clause, the FAA leaves no room for such arguments: any doubts must be resolved in favor of arbitration as a matter of federal law. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Congress, through the FAA, and the Supreme Court, through its consistent interpretation of the statute, have established a strong federal policy favoring the enforcement of arbitration agreements. The FAA provides that written arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation omitted). The statute was enacted "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (internal citations omitted). The FAA further establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp.* 565 U.S. at 97-98; *AT&T Mobility*, 563 U.S. at 344.

The FAA's policy favoring arbitration is so strong that courts resolve doubts in favor of arbitration *as a matter of law*. "[A]s a matter of federal law, any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Soaring Wind Energy, LLC v. CATIC USA, Inc.*, 333 F. Supp. 3d 642, 652 (N.D. Tex. 2018) ("The reviewing court must resolve all doubts in favor of arbitration.").

An arbitration agreement governed by the FAA, like the Arbitration Clause, is presumed valid and enforceable. *See Paladino v. Avnet Computer Techs., Inc.*, 134 F. 3d 1054, 1057 (11th Cir. 1998) ("The FAA creates a presumption in favor of arbitrability"); *see also McMahon*, 482 U.S. at 226; *Mitsubishi Motors Corp.* at 626-27. Accordingly, because a valid and enforceable arbitration agreement indisputably governs Plaintiffs' claims (Count 3) against Mythic, the FAA and binding Supreme Court precedent require the Court to presume that it is valid and enforceable and compel arbitration.

### 4. The FAA Applies Because the Representation Agreement Involves Interstate Commerce, and No Federal Policy Renders Plaintiffs' Claims Non-Arbitrable.

Finally, the FAA broadly applies to any contract directly or indirectly involving interstate commerce. 9 U.S. Code § 1; *See also Allied-Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). Interstate commerce is plainly affected where, as here, money and services move across state lines in the performance of the agreement. *See, e.g., U.S. v. Deason*, 622 Fed. Appx. 350, 354 (5th Cir. 2015); *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 598 (E.D. Tex. 2021) (citing *Goldfarb v. Va. State Bar*, 421 U.S. 773, 783–84 (1975)); *see also McLain v. Real Est. Bd. of New Orleans, Inc.*, 444 U.S. 232, 244 (1980). Under the Representation Agreement, payments flowed between third party contractors, Plaintiffs, and Mythic across state lines, and performance of the services thereunder involved communications and transactions with third parties located

throughout the United States. Mythic procured work for Plaintiffs with partners throughout the United States and accepted payments on Plaintiffs' behalf from entities located in various states. *See* Lucas Aff., ¶ 10. As such, the performance of the Representation Agreement by the parties was an integral part of various interstate transactions. Because the Representation Agreement affected interstate commerce, it is governed by the FAA, and no federal law nor policy exempts Plaintiffs' claims from arbitration. 9 U.S. Code § 1.

**B.     Plaintiffs' Claims (Counts 1 and 3) Against OTK and King Should Be Stayed Pending Resolution of the Arbitration.**

There are two interrelated agreements that govern the same business relationship. Plaintiffs entered into the Representation Agreement with Mythic, which governs Plaintiffs' commercial representation, compensation, and performance obligations. Separately, Plaintiff Rinaudo entered into an Owners Agreement with OTK governing his ownership and management rights within OTK and its affiliates. The Owners Agreement authorizes OTK to take action in response to contractual breaches by Rinaudo, including breaches of the Representation Agreement. The actions challenged in this lawsuit were taken by OTK, and its affiliates King and Mythic, pursuant to the Owners Agreement and are expressly tied to the breaches of the Representation Agreement. As a result, the claims (Counts 1 and 3) against OTK and King depend on issues being arbitrated under the Representation Agreement.

**1.   Section 3 of the FAA Mandates a Stay Pending Arbitration.**

Because issues that control Plaintiffs' claims (Counts 1 and 3) against OTK and King must be arbitrated under the Representation Agreement, the FAA governs whether those same claims may proceed in this Court while arbitration is pending. The FAA answers that question by explicitly requiring a stay when an arbitrable issue is presented. *See Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) ("'Unlike the word 'may,' which implies discretion,

the word 'shall' usually connotes a requirement'") (citation omitted).  The Supreme Court has likewise made clear the FAA creates a mandatory obligation that leaves "no place for the exercise of discretion by a district court." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (discussing §§ 2–4 and explaining that the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). Thus, when Section 3 of the FAA says that a court "shall ... stay" the proceeding, the court *must* do so.  *Smith*, 601 U.S. at 476.

Staying, rather than dismissing, an action is not optional. As the Supreme Court recently explained, "[s]taying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts" and ensures that the parties can return to federal court if arbitration breaks down or fails to resolve the dispute. *Id* at 478.  Accordingly, when a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, Section 3 of the FAA compels the court to stay the proceeding, rather than dismiss it. *Id* at 472.

> **2. A Stay of All Claims Against Moving Defendants Is Required Because Plaintiffs' Claims (Counts 1 and 3) Against OTK and KING Are Inextricably Intertwined with the Arbitrable Claims (Count 3) Against Mythic.**

Courts stay claims against non-signatories when those claims are inextricably intertwined with arbitrable claims or when their resolution turns on interpreting the underlying contract that is subject to arbitration. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999). Those principles apply squarely here.

Plaintiffs' claims against OTK and King turn on the same alleged conduct, contractual duties, and interpretive questions that will be decided in the arbitration against Mythic. As set forth in the Affidavits of Mohammad Arabikatbi and William Lucas (attached as Exhibits B and C), all of Plaintiffs' claims against Moving Defendants are inextricably related.

12

In particular, Plaintiffs challenge actions taken pursuant to the Owners Agreement as set forth in OTK's October 24, 2025 Second Notice, which Plaintiffs attached to their Complaint as Exhibit A. The Second Notice cites Plaintiffs' alleged breach of the Representation Agreement as one of the bases for OTK's actions under the Owners Agreement. Arabikatbi Aff. ¶¶ 41, 43. Accordingly, Plaintiffs' claims (Counts 1 and 3) against OTK and King turn in significant part on whether Plaintiffs breached the Representation Agreement, an issue that will be adjudicated in the arbitration against Mythic.

In addition, as detailed in the Affidavit of Mohammad Arabikatbi, OTK's actions under the Owners Agreement were prompted by egregious and recent misconduct that escalated prior concerns and precipitated formal action. Those facts are referenced solely to explain the timing and context of the Second Notice and to underscore why Plaintiffs' claims (Counts 1 and 3) against OTK and King are intertwined with issues being arbitrated under the Representation Agreement. *See* Arabikatbi Aff. ¶¶ 39-42.

As a result of the overlapping contractual issues and conduct described above, discovery relating to the arbitrable claims (Count 3) and Plaintiffs' claims (Counts 1 and 3) against OTK and King will involve the same core facts, witnesses, and evidence, such that proof offered in the arbitration would substantially overlap with proof required to adjudicate Plaintiffs' claims in this action. Arabikatbi Aff. ¶¶ 46-50. Accordingly, Plaintiffs' claims (Counts 1 and 3) against the Moving Defendants share the same operative evidence and contractual questions as the arbitrable claims against Mythic. Allowing those claims to proceed outside the arbitration poses a substantial risk of duplicative discovery and inconsistent rulings. Moreover, the interpretation of the Representation Agreement—and the factual and legal determinations made in the arbitration—may be dispositive of Plaintiffs' claims (Counts 1 and 3) against OTK and King. OTK and King

13

expressly relied on Plaintiffs' alleged breach of the Representation Agreement as a basis for the actions challenged in this lawsuit, and a determination in arbitration that such breach occurred will materially, if not dispositively, affect Plaintiffs' remaining claims.  Compl. ¶ 21; 34-37.

The claims (Counts 1 and 3) against OTK and King cannot proceed in this forum while the claims (Count 3) against Mythic are arbitrated without risking inconsistent rulings on overlapping questions of contract interpretation and Plaintiffs' alleged misconduct.  This Court would be required to confirm the findings of the arbitrator with respect to relevant issues because "the Supreme Court observed that § 9 of the FAA, which states that upon 'on application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title [9].'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  Confirmation of an arbitral award is mandatory absent one of the narrow statutory exceptions. *Id.*, *see also Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349, 352 (5th Cir. 2009).

In sum, because the arbitrator's determination as to whether Rinaudo breached the Representation Agreement will be subject to confirmation by this Court, the claims are thus so inextricably related that the findings in arbitration may prove to be dispositive of Plaintiffs' claims against the Moving Defendants.  Staying the action against the Moving Defendants will prevent duplicative proceedings and avoid rulings that could conflict with the arbitral determination.

## CONCLUSION

The FAA governs this dispute and requires enforcement of the parties' arbitration agreement according to its terms.  Plaintiffs executed a valid Representation Agreement with Mythic requiring that all disputes arising out of or relating to Mythic's representation be resolved in binding arbitration, yet now seek to litigate those disputes here.  The Representation Agreement

is valid, enforceable, and plainly encompasses Plaintiffs' claims against Mythic, requiring the Court to compel arbitration under binding precedent. Plaintiffs' remaining claims (Counts 1 and 3) against OTK and King are intertwined with the arbitrable dispute (Count 3) and turn on issues that will be decided in arbitration, requiring a stay to avoid inconsistent rulings.

For these reasons, the Moving Defendants respectfully request that the Court compel arbitration of Plaintiffs' claims (Count 3) against Mythic and stay all claims (Counts 1 and 3) against OTK, Mythic, and King pending a decision on the instant Motion and, if applicable, issuance of a final arbitration award.

Dated: December 23, 2025

Respectfully submitted,

*/s/ Steven L. Eychner*
Steven L. Eychner, Esq.
Admitted *Pro Hac Vice*
NY Bar No. 5752092
seychner@newmanlickstein.com
Wesley L. Gerrie, Esq.
Admitted *Pro Hac Vice*
NY Bar No. 5562988
wgerrie@newmanlickstein.com
Dean J. DiPilato, Esq.
Admitted *Pro Hac Vice*
NY Bar No. 3057791
ddipilato@newmanlickstein.com
**NEWMAN & LICKSTEIN, LLP**
109 South Warren Street, Suite 404
Syracuse, New York 13202
Phone: 315-422-1172
Fax: 315-422-1400

*/s/ Jennifer S. Freel*
Jennifer S. Freel
Texas Bar No. 24051327
jfreel@jw.com
**JACKSON WALKER LLP**
100 Congress Avenue, Suite 1100
Austin, TX 78701
Phone: 512-236-2330
Fax: 512-236-2002

> **ATTORNEYS FOR DEFENDANTS OTK MEDIA INC., MYTHIC TALENT MANAGEMENT INC., and KING GAMING LABS, INC.**

## CERTIFICATE OF CONFERENCE

On December 19, 2025, counsel for the Moving Defendants informed counsel for the Plaintiffs that the Moving Defendants would be filing this Motion. Plaintiffs' counsel responded by requesting a copy of the Representation Agreement, which counsel for the Movind Defendants provided. To date, Plaintiffs' counsel has not yet informed undersigned counsel as to whether they are opposed to the requested relief in the motion.

> */s/ Jennifer S. Freel*
> Jennifer S. Freel

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was electronically submitted to the Clerk of Court for the U.S. District Court, Western District of Texas, using the CM/ECF system. A true and correct copy of the foregoing document was served upon all counsel record via the Court's electronic filing service in accordance with the Federal Rules of Civil Procedure on December 23, 2025.

> */s/ Jennifer S. Freel*
> Jennifer S. Freel