UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MATTHEW RINAUDO and <br> MIZKIF ENTERPRISES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EMILY BETH SCHUNK, ZACK HOYT, OTK MEDIA, INC. d/b/a ONE TRUE KING, MYTHIC TALENT MANAGEMENT INC. and KING GAMING LABS, INC., <br><br> Defendants. | § § § § § § § § § § § § § § § | Case No. 1:25-cv-01773-RP |

### DEFENDANT ZACK HOYT'S MOTION TO DISMISS

Defendant Zack Hoyt (hereinafter "Hoyt") moves to dismiss Plaintiffs' Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and in the alternative moves for a more definite statement under Federal Rule of Civil Procedure 12(e).

### SUMMARY OF ARGUMENT

Plaintiff Matthew Rinaudo (hereinafter "Mizkif")[1] brings this lawsuit alleging, *inter alia*, defamation against Hoyt. Mizkif streams and promotes his own videos under the name "Mizkif". Pl. Compl. (Dkt. 1) at ¶ 11-12. Mizkif accuses Hoyt of "painting him as a rapist, domestic abuser, and emotional abuser." Pl. Compl. (Dkt. 1) at ¶ 39.

---

[1] Hoyt questions both the identity of the individual plaintiff and whether the proper individual plaintiff is before the Court. In the interim, Hoyt will identify the individual plaintiff as "Mizkif" herein. *See* Section IV, *infra*.

Yet, according to Mizkif himself:

"**I punched holes in the walls or slammed doors in aggression.**" Mizkif, *The Truth...*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=830s (at 13:53) (emphasis added).

"I'm not going to go back to the place I once was. I was suicidal, depressed, and taking every type of drug possible to fix my brain. And in doing that I hurt myself more. I was on steroids because I thought it would fix myself. I was taking shrooms every day to fix my brain, but that destroyed me. I tried acid and that backfired. **In doing that I know I effed up so bad and hurt so many people around. I lashed out, I was angry, and out of my mind.**" Spanix Team, *Spanixlogs* (Oct. 27, 2025) (archiving chat logs from streams), https://logs.spanix.team/?channel=mizkif&username=mizkif (extra return carriages omitted from quotes gathered from chat transcript as seen in included screenshot) (screenshot taken Jan. 7, 2026)

(emphasis added).[2]

**"I did take steroids that gave me insane anger issues."** Spanix Team, *Spanixlogs* (Oct. 27, 2025), https://logs.spanix.team/?channel=mizkif&username=mizkif (extra return carriages omitted from quotes gathered from chat transcript as seen in included screenshot) (screenshot taken Jan. 7, 2026) (emphasis added).[3]

**"I said that 'if she goes after me, then I will go nuclear.' And that is exactly what I said. And that is what is going to happen."** Mizkif, *The Truth…*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=1232s (at 20:32) (emphasis added).

*–Plaintiff, Matthew Rinaudo, a/k/a "Mizkif," a/k/a Matthew Joseph Misrendino about himself and his relationship with Emiru a/k/a Defendant Emily Beth Schunk (hereinafter "Emiru")*

---

[2] Below is a screenshot of the chat log:

[screenshot of Mizkif chat log from 2025-10-27, containing messages including: "I'm on ssris and have been, been a lot better on it"; "I have a therapist, an emdr one for trauma, I don't expect all you to stay, and I'm sorry to those I've hurt over the years"; "this isn't a pity party, it's me taking accountability while letting you know the reality."; "so bad"; "yes shrooms fucked me"; "every time I close my eyes since 2022 while I was in Austin , I invision different ways of killing myself"; "it doesn't change what I did in the past, I understand people will see that and not want to come back, or not talk to me."; "but I am proud of my progress this last year, I'm proud of who I've been becoming. I feel more normal then ever"; "I take full accountability for who I was, I wish I didn't just go for drugs and really focused on fixing myself. I went for short term fixes and it backfired"; "I got off steroids about a year ago fully, you can't just get off it"; "because I don't want you guys to know I was it was embarrassing"; "you could tell when I was"; "that gave me insane anger issues"; "I did take steroids"; "in doing that I know I fucked up so bad and hurt so many people around me. I lashed out, I was angry, and out of my mind"; "I tried acid and that backfired"; "so for 2 years all I did is take Shrooms to fix my brain, and steroids to fix myself"; "I would take my head and push it into my pool trying to drown myself on sheooms"; "like ever"; "never take shrooms when depressed"; "I was taking Shrooms everyday to fix my brain but that destroyed me"; "I was on steroids because I thought it would fix myself"; "more"; "and in doing that I hurt myself"; "I'm not going to go back to the place I once was. I was sucicial , depressed, and taking every type of drug possible to short term fix my brain"; "I've been in therapy for almost a year, been working on myself and I want to continue to do so"; "it's not weird , people don't know because people don't watch me"; "you know I know I've done a lot wrong in my years on twitch that I wish I could take back. but a lot of you know I've been working on myself for the past year hard"; "just chill I'm getting people saying this place is a freaking out"]

[3] The same quote may be seen in the middle of the screenshot in the note above this one.

Mizkif openly admits that he was violent, hurt people, lashed out, had "insane anger issues," took a host of drugs, and then told Emiru that he would "go nuclear" for publicly speaking about what happened. Mizkif, *The Truth…*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=1232s (at 20:32). Mizkif likewise admits that, in his relationship with Emiru, he slammed doors and punched holes in the walls "in aggression." Mizkif, *The Truth…*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=830s (at 13:53).[4] And that was *before* any commentary by Hoyt.

Mizkif is a public figure, Pl. Compl. (Dkt. 1) ¶¶ 11-23 (describing Plaintiff's lifelong pursuit of being a public figure and statistics about his publicity), who now complains that Hoyt—after listening to and reading *Mizkif's own public statements*—gave commentary about Mizkif's public statements. Mizkif, however, cannot give the Court any of that context in a pleading, or it would be obvious that nothing he is upset about is actionable as a defamation claim.

Not surprisingly, Plaintiffs' suit fails to state a claim: Mizkif is a public figure suing another public figure for defamation. Mizkif is constitutionally required to prove the falsity of the statements being made about his own admissions, as well as proving actual malice by clear and convincing evidence, and yet, he fails to even point out what the statements were. The complaint omits any allegedly defamatory statements, aside from four words ("the aggressor and abuser," Pl. Compl. (Dkt. 1) at ¶ 26) and an allusion to "truth." *Id.* at ¶ 27. Plaintiffs must provide, in order to state a claim for relief, the allegedly defamatory statements, but those are missing. Plaintiffs' complaint is a proverbial car without an engine—it can go nowhere.

---

[4] The video posted on Mizkif's channel even includes a clip that he himself apparently added after he speaks, with another well-known streamer commenting about the situation, who *also* says that "the throwing stuff around" at Emiru was "more than likely malicious" and that "he [Mizkif] would have to atone for that." *Id.* at 26:19. And, again, that is on his *own* video.

4

Texas law requires courts to review allegedly defamatory statements for the "gist" of the meaning considering the surrounding circumstances. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 628 (Tex. 2018) ("we held that '[i]n making the initial determination of whether a publication is capable of a defamatory meaning, we examine its 'gist.' That is, we construe the publication 'as a whole . . . .'" (quoting *D Magazine Partners, LP v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017)).

Plaintiffs neglect to give Hoyt or the Court the statement(s) as a whole, though, or even the better portion of it, or any source for it, or any date, time, or place it occurred. Both Hoyt and the Court will need to evaluate each statement to see *whether the statement is even actionable* or capable of a defamatory meaning. Hoyt expects that Plaintiffs can reveal nothing more than opinions, which are both constitutionally protected under the First Amendment and Texas law, and also not actionable, *Tatum*, 554 S.W.3d at 623, which is the reason Plaintiffs' complaint is devoid of the required details.

Plaintiffs likely complain only about opinions, fair reporting, truthful statements, or even someone repeating Mizkif's own words—we cannot know. We cannot even know which portions of which things were allegedly said that upset Plaintiffs. Yet this is key: the parties produce hours upon hours of video *daily*, and Hoyt has a right to know *what* the actual complaint is about.

Plaintiffs instead give a raft of after-the-fact characterizations of something that he perceived: that "[Mizkif] should be in jail, claimed he was abusing and manipulating others, hurting other people, and becoming an aggressor." Pl. Compl. (Dkt. 1) at ¶ 26.

Plaintiffs fail to meet the standard required by Rule 12 for that and other reasons. But at its most basic, Hoyt is entitled to know *what* the actual statement(s) is, so that it may be understood in context. Hoyt believes, from what little he can

5

gather from the pleading, that his alleged statements are either direct and fair reporting of Mizkif's own words, opinions about them, or other non-actionable and constitutionally protected activity. But it is unclear what Plaintiffs complain about, *particularly considering that Mizkif said these same things about himself.*

For instance, Mizkif stated *in the only publication Hoyt thinks may be at issue* that he "hurt so many people," "lashed out," and had steroid-fueled "insane anger issues." Yet Plaintiffs claim it is somehow defamatory that Hoyt believed Mizkif's *own* widely publicized statements about his own anger.

Hoyt refuses—and the law agrees with him—Plaintiffs' invitation to get inside of the head of an admitted angry, violent, drug user who "goes nuclear" on people and *then* try to guess what *Plaintiffs* characterize as "manipulating" or "hurting" others.

## FACTUAL BACKGROUND

Mizkif is a public figure with millions of online followers, constituting his primary profession. Pl. Compl. (Dkt. 1) at ¶¶ 10–12.[5] Hoyt is also a public figure with millions of online followers. Pl. Compl. (Dkt. 1) at ¶ 26. Hoyt is also a part owner of Defendant OTK. Pl. Compl. (Dkt. 1) at ¶ 14.[6]

Since at least 2023, Mizkif has made himself the subject of controversy for his reputed violence and aggression. Around that time, Mizkif can be seen on video

---

[5] Plaintiff Mizkif Enterprises, LLC is *allegedly* also a plaintiff as to the defamation claim against Hoyt, Pl. Compl. (Dkt. 1) at ¶¶ 38, 41 ("**Plaintiffs** incorporate . . ." and "**Plaintiffs'** reputation"), even though the entire Complaint never references any statement about or allegation concerning statements about Plaintiff Mizkif Enterprises, LLC. *See, e.g.*, Pl. Compl. (Dkt. 1) at ¶ 40 (basing their claim upon "statements concerning Rinaudo [i.e., Mizkif]").

[6] Importantly, these two Plaintiffs filed a larger suit against OTK and two other corporate entities ("Corporate Defendants") after disputes arose among them, including alleged violations of Mizkif's Representation Agreement. Pl. Compl. Ex. A (Dkt. 1-1) at 2 ("As such, Mythic is entitled to more than $600,000 in overdue Management Fees . . . ."). The Corporate Defendants have filed a Motion to Compel Arbitration and Stay the litigation which remains pending. *See* Dkt. 17. Plaintiffs opposed the motion and their response was due January 6, 2025, L.R. CV-7(e)(2), but as of this writing no response has been filed. Plaintiffs also added to their complaint this lone defamation claim against Hoyt, a part owner of OTK (a Corporate Defendant).

6

in the middle of a street slamming his brakes and engaging in an altercation, and then screaming at a man crouched on a curb in the middle of an Austin neighborhood, a fellow public figure, Mr. Jones, who claims that Mizkif hit him until he was "knocked out cold" when "he [Mizkif] continued to beat on my face." SS7, *MIZKIF BEATS MITCH JONES FIST FIGHT*, YouTube (Feb. 6, 2024), https://www.youtube.com/watch?v=qHc5o9c0PmA&t=15s (at 00:15). Mr. Jones can be seen on the video with bruises and marks on his neck.

Mizkif also got into a physical altercation with an owner of OTK *at a company meeting*. Mizkif admitted he had an incident with Nick, a part owner of OTK. Zack Hoyt, *Capture of livestream from Mizkif* (Jan. 2, 2026) (on file with author) (available at https://www.dropbox.com/scl/fi/t91tpct1pxo0wfisdxazf/Mizkif-reveals-the-altercation-was-with-Nick-Nmplol.mp4?rlkey=3fbdxfx7els1jf85phgnui6qu&e=1&st=5uskk1ph&dl=0view).

More recently, Mizkif was in a romantic relationship with Emiru that he claims was "toxic" and attempted to shift blame for violence by stating, *before any statement by Hoyt*, that his romantic interest, a very petite young woman, "was also violent." Mizkif describes that "violence" further: she would throw a plushie or clothing at him, though he admits to bruising her face by throwing things at her, slamming doors, and punching holes in walls. Mizkif, *The Truth…*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=830s (at 13:53).

Against that backdrop, Plaintiffs *then* filed this suit, claiming a variety of harms regarding these circumstances that are somehow not self-inflicted, but the alleged fault of others.

## ARGUMENT

Plaintiffs' defamation claim fails the Rule 12(b)(6) standard as to Hoyt for three independent reasons.

7

First, Plaintiffs fail to allege facts sufficient to state a cause of action for defamation under Texas law. *See* Section I, *infra*.

Second, the claim fails to clarify what the allegations are such that Hoyt can join them in defense or even know what Plaintiffs are talking about. *See* Section II, *infra*.

Third, Plaintiffs base their claims upon allegations of defamation that are time-barred under Texas law. *See* Section III, *infra*.

Fourth, Mizkif already admitted to the very things Plaintiffs claim are defamatory, which prohibits them from proceeding with making out a defamation claim under Texas law. *See* Section IV, *infra*.

Fifth, Plaintiffs fail to allege facts sufficient to show actual malice or falsity. *See* Section V, *infra*.

Sixth, Plaintiff "Matthew Rinaudo" does not appear to be the actual individual plaintiff, and it is unclear whether Plaintiff "Matthew Rinaudo" is the proper Plaintiff here at all. *See* Section VI, *infra*.

## I. **Plaintiffs fail to allege facts sufficient to state a cause of action for defamation under Texas law because they failed to allege defamatory statements or statements that are not opinion.**

Plaintiffs fail to put before the Court a complete statement or a source for any statement that they are allegedly concerned about—because whatever statement they are concerned about is not actionable as a matter of law.[7]

Texas law puts this burden firmly on Plaintiffs as a threshold question. "In a defamation case, the threshold question is whether the words used 'are reasonably capable of a defamatory meaning.'" *Tatum*, 554 S.W.3d at 624 (citation omitted);

---

[7] This is especially true considering Plaintiffs' intense burden of proof: "A public figure already bears the substantial burden of proving actual malice by clear and convincing evidence." *Turner v. KTRK Television*, 38 S.W.3d 103, 116 (Tex. 2000); *New York Times Co. v. Sullivan*, 376 U.S. 254, 288–89 (1964).

*Turner*, 38 S.W.3d at 114 (holding "an allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it"); *In re Lipsky*, 460 S.W.3d 579, 594 (Tex. 2015) ("'It is well settled that the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements.'" (citation omitted)). The Texas Supreme Court instructs that, "[w]hether a publication is capable of a defamatory meaning is initially a question for the court." *Turner*, 38 S.W.3d at 114; *In re Lipsky*, 460 S.W.3d at 594 (requiring same and listing out the actual statements cited as potentially defamatory).[8]

Under these guidelines, there are obvious problems with Plaintiffs' allegations about Hoyt. First, Hoyt's alleged statements may well be his commentary on and interpretation of *Mizkif's own video and written admissions* to things such as violence, drug abuse, anger, and aggression. Plaintiffs' defamation claim against Hoyt fails on its face if he owns up to what he said, and what people were talking about.

Second, Plaintiffs use a self-serving interpretation of whatever is alleged Hoyt said, making it difficult for Hoyt—a public commentator often asked about Mizkif—to know what Plaintiffs are complaining about.

Third, Texas courts require plaintiffs to adduce statements "not presented as opinion,"—unlike the commentator videos which Plaintiffs may be aiming at in this suit—and "sufficiently factual to be susceptible of being proved true or false."

---

[8] Texas district courts likewise routinely dismiss allegations that fail to plead a defamation claim with sufficient specificity so that the reviewing court can ascertain the allegations considering the pertinent legal standards of review. *See, e.g.*, Order Granting Def. Tiffany Quini's Mot. to Dismiss, *Manbeck v. Quini*, No. D-1-GN-22-003217 (Travis Cty. Dist. Ct. Nov. 18, 2022) (dismissing defamation claim for failure to adequately identify allegedly defamatory statements to allow for the statement to be reviewed in context as required by law, particularly where the statements involve video or streaming with numerous third-party interactions as part of the context, and where statements are statements of opinion).

9

*In re Lipsky*, 460 S.W.3d at 595 (citation and quotation omitted).

Fourth, Texas law provides that, "[w]hether a statement is an opinion is a question of law." *Tatum*, 554 S.W.3d at 639. Plaintiffs appear to be citing solely opinions: news commentary about current events where, as best as one can guess, statements were likely about Mizkif's *own admissions and public statements*, even citing them—but we cannot know that for sure, because Plaintiffs refuse to identify which statement(s) are problematic amidst the thousands of hours of online content the parties publish.

Plaintiffs' pleading failures defy Texas law and hinder Hoyt's ability to state his defenses. *Bentley*, 94 S.W.3d at 579 ("It is well settled that 'the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements.' This is also true in determining whether a publication is an actionable statement of fact or a constitutionally protected expression of opinion.").

As Plaintiffs admit, online commentators and streamers are continuously engaging with third-party comments and statements while streaming, often on the video themselves, which lends itself to a didactic commentary environment. Pl. Compl. (Dkt. 1) at ¶ 30 (citing alleged comments from third parties displayed during a livestream as part of the context of a statement). Thus, Plaintiffs need to specify whether they are complaining about something that *Hoyt* said or whether the real complaint is about something in writing from a third party. Plaintiffs declined to plead enough actual reference to statements to identify which actual statements are allegedly defamatory so that Hoyt might do the same and put things into their actual context—a context absent from Plaintiffs' complaint.

For instance, Plaintiffs complain about a statement regarding Mizkif and "jail" Pl. Compl. (Dkt. 1) at ¶ 25 ("[Mizkif] should be in jail"). Hoyt can identify only one statement he made about jail. The comment was made during a long video

10

commentary about Mizkif's own admissions—after playing videos of Mizkif's own admissions for Hoyt's audience to see. A third-party member of his audience then asked Hoyt whether he had any opinion as to whether Mizkif "[was] done" because of his own admissions and behavior. Hoyt offered an opinion and speculation in response:

> I honestly, I think that he should just take a break. He should just try to like legitimately, like, just stop. I think that he, he will continue spiraling, and I think it might have already reached this point . . . but I think that it will reach the point where he ends up doing something that ends him up in jail, straight up. . . . I really do think that he should just take a break. And calm down.

Nothing about that statement is defamatory. It does not even go so far as to advocate that Mizkif should be in jail, despite Mizkif's own admitted history of violence and drug use.

And that is just the one example that is locatable: Plaintiffs refuse to give any other alleged statements or sources, so Hoyt is left guessing when all Plaintiffs say is that Mizkif is upset about the word "truth" in some unspecified places. Plaintiffs' claim fails because it does not present a single statement that can be read as a whole, in context, to ascertain whether it is capable of a defamatory meaning. Hoyt (and the Court) is left to guess, and all Hoyt has found are statements incapable of defamatory meaning under Texas law.

## II.   Plaintiffs fail to sufficiently allege facts to state a cause of action for defamation under Texas law due to unclear allegations.

First, Plaintiffs give *no allegations* about the corporate plaintiff, who is never mentioned regarding any statement by Hoyt, nor would there be reason to think that Hoyt would be talking about (if even aware of) the alleged limited liability company.

Texas law requires that a statement be *capable of* a defamatory meaning to be actionable. To do that, Plaintiffs must provide the statements regarding the LLC

11

complained about—but they are absent from the pleading.

Second, Plaintiffs largely decline to give the medium regarding the various things complained about, so Hoyt does not know whether Plaintiffs are complaining of libel or slander. Plaintiffs mention only one video without any specifics, including whether they complain of text or of verbal statements.

Third, Plaintiffs attempt to mix and match the claims: are Plaintiffs attempting to stick Hoyt with statements made by Emiru? We do not know, and that is particularly challenging here, where Plaintiffs' allegations against Hoyt relate, at least in part, to statements that may be about Emiru's relationship with Mizkif. Plaintiffs muddy the waters regarding allegations by two separate plaintiffs against two separate defendants without delineating which statements were made by or about whom. These things matter, as they implicate things such as the fair-reporting privilege, particularly as to Hoyt, a third-party commentator.

### III. Plaintiffs appear to base the defamation claim upon things more than one year after the initial publication of the allegedly defamatory statement.

Some, if not all, of Plaintiffs' claims may be time barred. Texas law adopts the one publication rule such that old statements about Mizkif's violent incidents in the past are time-barred altogether:

> Texas has adopted a one-year statute of limitations for libel claims. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a). The one-year limitations period begins to run when publication of the libelous statement is complete, which is "the last day of the mass distribution of copies of the printed matter." *Holloway v. Butler,* 662 S.W.2d 688, 692 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). "On that date, the publisher of the statement has made the libelous matter available to his intended audience and the tort is complete." *Stephan v. Baylor Med. Ctr. at Garland,* 20 S.W.3d 880, 889 (Tex. App.—Dallas 2000, no pet.). Because the period begins to run on the date the publication is complete, this rule is commonly referred to as the "single publication rule." *See id.*; *see also Williamson v. New Times, Inc.,* 980 S.W.2d 706, 710 (Tex. App.—Fort Worth 1998, no pet.).

*Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 142 (5th Cir. 2007); *Hamad v. Ctr. for the Study of Popular Culture*, No. A-06-CA-285-SS (W.D. Tex. Jun. 26, 2006) (adopting single publication rule for Internet publications).

The Fifth Circuit explained that Texas law follows this rule "to prevent plaintiffs from bringing stale and repetitive defamation claims against publishers." *Id.* Here, Plaintiffs may be complaining about the same past incidents that are years behind Mizkif now, such as his assault on Mr. Jones, which is captured on video, excerpts of which have been published around the world, complete with later photos of injuries and a hospital visit, and which had already been discussed broadly. Video by David Jones from his livestream, SS7, *MIZKIF BEATS MITCH JONES FIST FIGHT*, YouTube (Feb. 6, 2024), https://www.youtube.com/watch?v=qHc509c0PmA&t=15s (at 00:15).

These are all fatal defects to a defamation claim, but Plaintiffs refuse to plead with requisite specificity because that would make it even more obvious that this entire exercise is a waste of the Court's time to garner Mizkif media attention and endeavor to silence his critics.

**IV.   Plaintiff Mizkif admits in his own words to the very things he complains about, so the statements are incapable of being defamatory.**

Plaintiffs must show that the statements they allege are defamatory. *Tatum*, 554 S.W.3d at 623. As noted above, Mizkif made a host of admissions on his own which are already part of the context of Hoyt's statements and preclude Mizkif from seeking reputational damages as to things *he already said about himself*. That alone kills Plaintiffs' complaint: Mizkif already said these things, which precludes him from seeking further relief. Plaintiffs omit this from the Complaint, because including it would make apparent that Plaintiffs lack any valid defamation claim.

## V. Plaintiffs fail to allege facts sufficient to show actual malice or falsity.

Texas law requires Plaintiffs to show actual malice. "A public figure already bears the substantial burden of proving actual malice by clear and convincing evidence." *Turner*, 38 S.W.3d at 116.[9] "To establish actual malice, a public figure must prove that the defendant made the statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.' In this context, 'reckless disregard' means that the defendant 'entertained serious doubts as to the truth of his publication.'" *Turner*, 38 S.W.3d at 120 (citation omitted).

Plaintiffs omit their sources, but the only statement that may be a target is a commentary by Hoyt, including Mizkif's own admissions to the very things that Plaintiffs now sue about. This renders any attempt by Plaintiffs to call Hoyt's commentary defamation impossible. Mizkif cannot fault someone for relying upon *his own words* in admitting that he is violent, uses drugs, is angry, aggressive, attempted to have sex with Emiru, and punches walls. Mizkif may not like his own words now, but he cannot sue Hoyt for reporting about what Mizkif himself said.

Plaintiffs must also show falsity. *Bentley*, 94 S.W.3d at 580 (noting that the U.S. Supreme Court required that "'a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved' and 'where public-official or public-figure plaintiffs are involved'") (citation omitted). For instance, the Texas Supreme Court found that even the phrase "y'all are the ones that oughta be in jail" would not, in context, have "led a reasonable person to think that [a defendant] was asserting that [the plaintiff] had actually committed a crime" on its own, citing a litany of examples that go beyond the allegations in the

---

[9] Mizkif acknowledges both he and Hoyt are public figures with millions of followers. Pl. Compl. (Dkt. 1) at ¶¶ 11–12, 19, 26, 27, 39.

14

complaint. *Bentley*, 94 S.W.3d at 582 n.50. That example goes well beyond anything Plaintiffs allege in this complaint.[10]

## VI. Plaintiff "Matthew Rinaudo" is not a real person and/or the proper party.

Plaintiffs failed to advise the Court that the Complaint was filed by someone other than the real plaintiff or that an alias is being used. Hoyt knows "Mizkif" to be Matthew Joseph Misrendino, but he is not the named Plaintiff.

All parties deserve the most basic constitutional due process in knowing that they can obtain a judgment against the proper party so that a plaintiff cannot bring the same claim again, or avoid making it known that, in fact, he was the person to bring this meritless suit. The individual plaintiff cannot hide behind another name. Fed. R. Civ. P. 10(a) ("The title of the complaint must name all parties . . . ."); Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.").

Plaintiffs' errors in nomenclature are fatal for at least two reasons: first, a plaintiff is required to be a real person and a proper party, according to Rules 10(a) and 17(a)(1). And second, a plaintiff must show that the statements are about himself, and Plaintiffs' complaint, as pled, does not mention Matthew Joseph Misrendino, or how the two are related. *Id.*

Furthermore, "Matthew Rinaudo" is neither a proper plaintiff nor the correct party, so Plaintiffs fail to demonstrate diversity jurisdiction as his alleged California residency appears to be the only basis for diversity jurisdiction; the corporation appears to rely upon it as well. Pl. Compl. (Dkt. 1) at ¶¶ 1–2.

---

[10] A statement in that case was ultimately found capable of a defamatory meaning for another reason, which was because of an allegation of taking bribes/public corruption, despite the litany of lurid accusations that have been found by courts to be non-defamatory as listed by the Court in footnote 50 of its opinion in *Bentley*. *Bentley*, 94 S.W.3d at 582 n.50, 583–84 (noting that Defendant had invited Bentley on his show to disprove facts about corruption and concluding that Defendant had seemed to mean the word corrupt as a fact assertion).

## **CONCLUSION**

Plaintiffs' claim for defamation against Zack Hoyt fails to identify any defamatory statement or which statement(s), in fact, the Plaintiffs even complain about. Instead, Plaintiffs offer nothing but Mizkif being upset at his own characterizations of things—leaving the Court and Hoyt to guess. Plaintiffs therefore fail to state a claim that entitle Plaintiffs to relief. Mizkif does not even include his proper name or any allegations related to the corporate plaintiff entity.

In sum, Plaintiffs filed a federal lawsuit without naming a real person as an individual plaintiff and without making a single, concrete allegation about any defamatory statement. The defamation claim against Hoyt should be dismissed pursuant to Rule 12(b)(6) on all these bases. Therefore, Defendant Hoyt respectfully prays that this Court:

1. Grant Hoyt's motion to dismiss;
2. Dismiss Plaintiffs' lawsuit as to Hoyt with prejudice;
3. In the alternative, order Plaintiffs to replead; and
4. Grant to Hoyt all other relief it deems just and proper under these circumstances.

DATED: January 8, 2026

Respectfully submitted,

Austin R. Nimocks
Texas Bar No. 24002695
austin@pntlawfirm.com

Christopher L. Peele
Texas Bar No. 24013308
chris@pntlawfirm.com

*/s/Cleve W. Doty*
Cleve W. Doty
Texas Bar No. 24069627
cleve@pntlawfirm.com

**PNT Law Firm**
206 Wild Basin Rd. S.
Bldg. A, Ste. 206
Austin, TX 78746
Phone: (512) 522-4893
Fax: (512) 522-4893

**COUNSEL FOR DEFENDANT, ZACK HOYT**

**CERTIFICATE OF SERVICE**

I certify that on January 8, 2026, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

>Aaron J. Burke
>Burke Bogdanowicz PLLC
>1201 Elm St., Ste. 4000
>Dallas, TX 75270
>(512) 507-4097
>aaron@burkebog.com

*Counsel for Plaintiffs*

>J. Collin Spring
>Burke Bogdanowicz PLLC
>1201 Elm St., Ste. 4000
>Dallas, TX 75270
>(512) 507-4097
>jspring@burkebog.com

*Counsel for Plaintiffs*

>Alexia P. Nicoloulias
>Burke Bogdanowicz PLLC
>1201 Elm St., Ste. 4000
>Dallas, TX 75270
>(512) 507-4097
>anicoloulias@burkebog.com

*Counsel for Plaintiffs*

>J. Hunter Ralston
>Burke Bogdanowicz PLLC
>1201 Elm Street, Suite 4000
>Dallas, Texas 75270
>(512) 507-4097
>hralston@burkebog.com

*Counsel for Plaintiffs*

>Jennifer S. Freel
>Jackson Walker
>100 Congress Ave., Ste. 1100
>Austin, TX 78701
>(512) 739-8414
>(512) 236-2002 (fax)
>jfreel@jw.com

*Counsel for Defendants, OTK Media, Inc. d/b/a One True King, Mythic Talent Management Inc., and King Gaming Labs, Inc.*

>Steven L. Eychner
>Newman & Lickstein, LLP
>109 S. Warren St., Suite 404
>Syracuse NY 13202
>(315) 422-1172
>seychner@newmanlickstein.com

*Counsel for Defendants, OTK Media, Inc. d/b/a One True King, Mythic Talent Management Inc., and King Gaming Labs, Inc.*

>Dean J. DiPilato
>Newman & Lickstein, LLP
>109 S. Warren St., Suite 404
>Syracuse NY 13202
>(813) 909-3538
>ddipilato@newmanlickstein.com

*Counsel for Defendants, OTK Media, Inc. d/b/a One True King, Mythic Talent Management Inc., and King Gaming Labs, Inc.*

Wesley Lome Gerrie
Newman & Lickstein, LLP
109 S. Warren St., Suite 404
Syracuse NY 13202
(315) 422-1172
wgerrie@newmanlickstein.com

*Counsel for Defendants, OTK Media, Inc. d/b/a One True King, Mythic Talent Management Inc., and King Gaming Labs, Inc.*

I further certify that a copy of the foregoing document(s) was e-mailed to the person(s) listed below:

Jessica Rankin Corpuz
weintraub | tobin
10250 Constellation Blvd., Ste. 2900
Los Angeles, CA 90067
(310) 860-3327
jcorpuz@weintraub.com

*Counsel for Defendant, Emily Beth Schunk*

*/s/ Austin R. Nimocks*
Austin R. Nimocks
