FILED
January 14, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
         DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | |
|---|---|
| MATTHEW RINAUDO and MIZKIF ENTERPRISES, LLC, § § § Plaintiffs, § § v. § § EMILY BETH SCHUNK, ZACK HOYT, OTK MEDIA INC. d/b/a ONE TRUE KING, MYTHIC TALENT MANAGEMENT INC. and KING GAMING LABS, INC., § § § § § § § § Defendants. § | Case No. 1:25-CV-01773 |

### RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION FOR LEAVE

COMES NOW Plaintiffs Matthew Rinaudo and Mizkif Enterprises, LLC ("collectively, "Rinaudo") and files this *Response in Opposition* to Defendants OTK Media, Inc. ("OTK"), Mythic Talent Management, Inc. ("Mythic") and King Gaming Labs, Inc.'s ("King") (collectively, "Defendants") *Motion to Compel Arbitration and Stay Litigation* (the "Motion"). In support thereof, Rinaudo respectfully shows the Court as follows herein. **Should the Court grant this *Motion for Leave*, Rinaudo respectfully requests oral hearing on Defendants'** *Motion to Compel Arbitration.*

### MOTION FOR LEAVE

Defendant's *Motion* was filed on December 23, 2025. Inadvertently, Rinaudo's counsel calendared the deadline to file this *Response* in accordance with the 21-day period provided for in the Local Rules of the Northern and Southern Districts of Texas instead of within the 14-day period provided for in the Local Rules of this Court. This was brought to the undersigned's attention on

the afternoon of January 7, 2026 during a phone conference with counsel for Defendants. Rinaudo respectfully requests leave of the Court to file his *Response* as of January 8, 2026.

A court may excuse a late filing upon a showing of excusable neglect for the delay. FED. R. CIV. P. 6(b). "This standard is not a high bar to extend the deadline." *Hill Country Trust v. Silverberg*, No. 1:18-CV-635-RP, 2018 WL 6267880 (W.D. Tex. Nov. 28, 2018) (Pitman, J.). The question of whether a party has demonstrated excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). In making this determination, courts consider (1) "the danger of prejudice to [the other party];" (2) "the length of the delay and its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within the reasonable control of the movant;" and (4) whether the movant acted in good faith." *Id.* On balance, these factors weigh in favor of granting leave to file this *Response*.

First, permitting the *Response* will not prejudice Defendants. The only way in which it will impact Defendants in any way is that their reply briefing, should they choose to file, will be due on January 22, 2026, instead of January 20, 2026.

Second, the delay here is short—less than 48 hours—and will have little to no impact on judicial proceedings. This Court has found that a delay of even up to six months, under certain circumstances, had a small effect. *U.S. v. $48,800, more or less, in U.S. Currency*, No. 6:15-CV-364-RP, 2017 WL 1493705 *5 (W.D. Tex. Apr. 26, 2017) (Pitman, J.). Here, as in other cases where the Court has granted leave to file, the delay will "not interfere with other deadlines," and "the delayed filing—should it be accepted—will put the case in the same position it would have been had the claim been timely filed." *Id.*

The undersigned acted in good faith pursuant to a misunderstanding of the relevant deadline. This is evidenced by the timetable. After first becoming aware of the issue on a phone call at 3:22PM on January 7th, the undersigned finalized and filed this response before close of business the following day.

This Court has, admittedly, already decided that an attorney's failure to properly calendar a deadline does not favor extension. *Scott v. White*, No. 1:16-CV-1287-RP, 2019 WL 122055 (W.D. Tex. Jan. 7, 2019) (Pitman, J.). However, this factor is not dispositive. This case is akin to *Scott v. White*, wherein a response to a motion for summary judgment was filed five days after it was due. The attorney in *Scott* explained that, as here, the filing was made late due to a calendaring error. *Id.* at *7. The Court noted that, while the reason for missing the deadline did not favor extension, "the delay was brief and the prejudice to [the other party] negligible." *Id.* It further noted that the attorney "acted in good faith under a mistaken belief," found that the late filing was due to excusable neglect, and granted a *post hoc* extension to the date that the filing was made. *Id.* This case presents essentially identical facts—the only point of differentiation is that here the delay was two days instead of five. Accordingly, Rinaudo respectfully prays that the Court show the same grace and lenience here as it did in that matter and accept the following *Response* for consideration.

### RESPONSE TO MOTION TO COMPEL ARBITRATION

I. RINAUDO'S CLAIMS ARE NOT ARBITRABLE UNDER THE ENDING FORCED ARBITRATION OF SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT OF 2021.

Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA") for the purpose of ensuring that cases involving an alleged sexual assault could not be subject to mandatory arbitration. That law establishes that:

> "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement . . . shall

be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute."

9 U.S.C. § 402.

A "sexual assault dispute" is a "dispute involving a nonconsensual sexual act or sexual contact." 9 U.S.C. § 401(3). Accordingly, for the EFAA to prohibit arbitration, (1) the plaintiff must allege a dispute involving a nonconsensual sexual act or sexual conduct; and (2) the lawsuit must relate to the sexual assault dispute.

It is important to note at the onset the distinction between a "claim" and a "dispute." The Southern District of Florida recently provided a helpful explanation:

> Congress wrote the EFAA to apply when a plaintiff alleges a sexual assault *dispute*, not, as Defendant submits, when a plaintiff pleads a specific sexual assault *claim*, let alone a violation of a law explicitly prohibiting sexual assault. In fact, the EFAA never makes use of the word "claim." While a dispute may eventually give rise to a claim, the relationship between the two terms if not one of logical necessity. A dispute—a conflict or controversy—may exist where no one has asserted a right to relief, but for a claim to exist, a right must be asserted . . . Of course, for the EFAA to apply at all, the dispute must give rise to claims that are brought before a court. But Congress requires courts to focus on the *dispute* at issue to determine the EFAA's applicability, not on the form of the *claims*.
>
> *Doe v. Celebrity Cruises, Inc.*, 792 F. Supp. 3d 1371, 1379 (S.D. Fla. 2025) (emphasis in original).

Because the dispute between Rinaudo, Schunk, and Defendants involves an alleged sexual assault and this lawsuit relates to that dispute, the EFAA renders any arbitration agreements unenforceable.

> A. *Schunk's public allegations against Rinaudo and Defendants' response to them constitute "sexual assault dispute" for purposes of the EFAA.*

Congress did not limit its definition of "sexual assault dispute" to the prototypical case where an employee brings suit against their employer for sexual misconduct occurring in the workplace. *See* 9 U.S.C. § 402. Rather, it utilized expansive language.

To be clear, **Rinaudo does not concede that he committed a nonconsensual sexual act or sexual contact**—indeed, he denies this in the strictest possible terms and asserts a defamation claim based on the sexual assault allegations. But the Act does not cabin its application to cases where the parties agree whether or not a sexual assault in fact took place; by its very terms, it applies to "*disputes* involving" sexual assault. 9 U.S.C. § 401(3) (emphasis added). The EFAA would be a craven watchdog if it only applied where the parties did not dispute whether the sexual assault alleged actually took place.

As courts have recognized, the EFAA "contains no limitations regarding who committed the sexual assault, where it was committed, or when it was committed." *Polen v. API Grp. Life Safety USA, LLC*, No. 3:25-CV-1196-SI, 2025 WL 3251349 *4 (D. Ore. Nov. 21, 2025). Courts have also applied the EFAA to disputes that are not between the alleged aggressor and victim. *Id.* In *Polen*, an alleged victim of domestic abuse brought claims against her employer for failing to accommodate her needs as a victim of violence. *Id.* at *1. It was undisputed that neither the defendant nor any of its employees had sexually assaulted the plaintiff. *Id.* at *5. Nonetheless, the *Polen* court found that the EFAA barred arbitration. *Id.*

In reaching that holding, the court noted the broad language employed by Congress in drafting the EFAA. *Id.* It noted that the dispute need only "involve" a nonconsensual sexual act or sexual contact, and that the Supreme Court of the United States has already instructed courts to read that word broadly in the arbitration context. *Id.* at *3 (citing and quoting *Allied-Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265 (1995)). It noted that, based on this Supreme Court guidance, "the word 'involving' in the phrase 'dispute involving nonconsensual sexual act or contract' must carry with it a similarly expansive reading." *Id.*

Similarly, the Southern District of Florida recently held that a Jones Act claim and a claim for unseaworthiness were "sexual assault disputes," despite the fact that the plaintiff did not directly allege a cause of action for sexual assault. *Bulic v. Celebrity Cruises, Inc.*, No. 25-21231-CIV-ALTONAGA, 2025 WL 1783865 (S.D. Fla. June 27, 2025). As that court noted, "the statute's sexual assault prong imposes no requirement that a plaintiff bring [their] claim under a law explicitly prohibiting sexual assault. It is enough that the dispute "involv[es] a nonconsensual sexual act or sexual contact." *Id.* at *4 (second alteration in original; first added).

Indeed, the EFAA's language is broad enough that courts have found that suits where *neither party was involved in the alleged sexual conduct* fall within its ambit. In *Usai v. Club Mgmt. Miami II, LLC*, the plaintiffs reported alleged sexual harassment that targeted other employees who were not party to the lawsuit. *Usai v. Club Mgmt. Miami II, LLC*, --- F. Supp. 3d ---, 2025 WL 2701666 (S.D. Fla. Sept. 23, 2025). After termination, the plaintiffs brought a retaliation suit against their former employer. *Id.* at *2. The court concluded that the EFAA applied because the plaintiffs' "claims [we]re based on reporting the conduct that is alleged to constitute sexual harassment." *Id.* at *5.

Here, a core dispute between the parties centers around an alleged sexual assault. Indeed, OTK's Chief Executive Officer concedes in the affidavit he offers in support of this *Motion* that Defendants' attempts to terminate Rinaudo's interest in the company were based on Schunk's "allegations that are referenced in Plaintiff's Complaint," i.e., allegations of sexual assault. Def.'s Ex. B-3 at 40. The dispute between the parties involves an alleged sexual assault and, as such, constitute a "sexual assault dispute" for purposes of the EFAA. The Defendants terminated Rinaudo's interests in response to allegations of sexual assault. Schunk defamed Rinaudo before an audience of millions alleging that he had committed a sexual assault. The core dispute between

the parties here revolves around these allegations and Defendants' actions in response to them. Accordingly, this case presents a "sexual assault dispute."

Further, Rinaudo is a "person alleging conduct" for purposes of making the EFAA election to preclude arbitration. The EFAA does not require that an "alleged victim" be the one to make an EFAA election. *See* 9 U.S.C. § 402. Where Congress intends to limit a right to only alleged victims, it knows how to do so. 10 U.S.C. § 80(b)(e)(2) establishes that a "*victim* may petition to the [U.S. Army Court of Criminal Appeals] for a writ of mandamus" to quash a deposition in certain circumstances. (emphasis added). The Violence Against Women Act, at 34 U.S.C. § 12391, provides that a "victim" may disclose STD test results to certain persons. 42 U.S.C. § 20141 provides that, in the context of sexual assault investigations, a "*victim* may waive anonymity and confidentiality" of certain testing. (emphasis added). In enacting the EFAA, Congress did not choose to limit its application to claims brought by "victims," but rather by any "person alleging conduct" where that conduct sets forth a sexual assault dispute. 9 U.S.C. § 402.

B.  *Because the EFAA applies, no part of the case may be referred to arbitration.*

When the EFAA applies, it bars the enforcement of any "predispute arbitration agreement . . . with respect to a <u>case</u> which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute." 9 U.S.C. § 402(b). As court after court has held, this prevents any individual claims within a lawsuit from being severed out and sent to arbitration, as Defendants here urge the Court to do. *See, e.g, Kelly v. Rosenberg & Estis, P.C.*, --- F. Supp. 3d ---, 25-CV-4776, 2025 WL 2709157 (S.D.N.Y. Sept. 23, 2025). "Congress chose to amend the [Federal Arbitration Act] with text that renders an arbitration agreement unenforceable with respect to an entire 'case' that 'relates to' a sexual harassment dispute, not merely with respect to the sexual harassment claims themselves." *Id.* Accordingly, "the EFAA applies to an entire case, not just a sexual harassment

**MOTION FOR LEAVE AND RESPONSE TO MOTION TO COMPEL ARBITRATION**                                       7

claim within a case." *Bray v. Rhythm Mgmt. Grp. LLC*, No. TDC-23-3142, 2024 WL 4278989 *7 (D. Md. Sept. 24, 2024).

The federal district courts that have considered the issue are uniform in holding that the EFAA bars severance of any claim within a case. *See, e.g., Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917 (N.D. Cal. 2023); *Johnson v. Everyrealm*, No. 22 CIV 6669 (PAE), 657 F. Supp. 3d 535, 544 (S.D.N.Y. Feb. 24, 2023); *Holsten v. Barclays Servs. LLC*, No. 3:24-CV-844, 2025 WL 2696991 (E.D. Va. Sept. 22, 2025); *Usai*, 2025 WL 2701666 at *3.

Accordingly, to compel arbitration, Defendants would need to show not only that their claims do not relate to the alleged sexual assault (which they cannot do, as they have admitted the opposite)—they would need to show their claims are not properly joined with the claims against Schunk. Defendants make no such contention. Even should the Court decide the sexual assault allegations play no role whatsoever in the claims against Defendants, the EFAA bars arbitration nonetheless. The EFAA "keys the scope of the invalidation of the arbitration clause to the entire 'case' relating to the sexual harassment dispute. It thus does not limit the invalidation to the claim or claims in which that dispute plays a part." *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558 (S.D.N.Y. Feb. 24, 2023).

II.  IN THE ALTERNATIVE, THE COURT SHOULD NOT STAY RINAUDO'S BREACH OF CONTRACT CLAIMS AGAINST OTK AND KING BECAUSE THOSE CLAIMS ARE NOT SUFFICIENTLY INTERTWINED WITH THE CLAIMS AGAINST MYTHIC.

Rinaudo has brought two separate claims against Defendants. Count One sounds in breach of contract and concerns Defendants' breach of the Ownership Agreement between OTK and Rinaudo. Count Three seeks declaratory judgment against Mythic, King, and OTK that Rinaudo is not in violation of the Representation Agreement between Mythic and Rinaudo. These claims

clearly do not turn on the interpretation of the same contract and are not so inextricably intertwined as to require that Count One be arbitrated.

Defendants OTK and King could have, but did not, bargain for arbitration agreements in their contracts with Rinaudo. It is uncontested that only the Representation Agreement with Mythic contains an arbitration provision.

> A. *By its terms, the Representation Agreement does not reach the breach of contract claims.*

The arbitration provision of the Representation Agreement limits its application to "disputes and controversies of every kind and nature whatsoever *between Mythic and [Rinaudo] arising out of, or in connection with, Mythic's representation of Client.*" Def.'s Ex. 3-D at 2. Count One is not a dispute or controversy "between Mythic and Rinaudo," and it does not "arise out of" and is not "in connection with" Mythic's representation of Rinaudo. It is a dispute and controversy between Rinaudo, OTK, and King concerning OTK's rescission of Rinaudo's ownership interests under the Ownership Agreement, which does not contain an arbitration provision.

Defendants' argument proceeds as follows: Rinaudo is suing Defendants for violating the Owners' Agreement. In the letter where Defendants informed Rinaudo that they had violated the Owners' Agreement, they mentioned the Representation Agreement. Therefore, the arbitration clause of the Representation Agreement applies. *Motion* at 13. They cite no authority to suggest that this tenuous relationship transformed the breach of contract dispute into one "arising out of" or "relating to" Mythic's representation.

> B. *Resolving the breach of contract claims will not require construction of the Representation Agreement.*

In Defendants' own words, "The Owners' Agreement, and actions taken by OTK and King thereunder, are the subject of Plaintiffs' claims against OTK and King in this action." *Motion* at

12. They do not claim that the actions taken by Defendants under the Representation Agreement are the basis for the breach of contract action. Rather, Defendants claim summarily that "[t]he Owners Agreement authorizes OTK to take action in response to contractual breaches by Rinaudo, including breaches of the Representation Agreement." *Motion* at 11. They do not identify a provision of the Owners Agreement that gives OTK such an authorization, because there isn't one.

The Owners' Agreement never directly mentions the Representation Agreement, and indirectly refers to Rinaudo's "engagement[s] with . . . any Company Affiliates" exactly once. That provision, Section 4(b), provides:

> Company will also have the right to terminate Owner's engagement with Company and any Company Affiliate for an "**Owner Material Breach**," which for purposes of this Agreement includes, without limitation, (i) Owner making disparaging remarks about the Company and/or a Company Affiliate, including any party involved with the Company or Company Affiliate, any sponsor or other commercial partner, or any of their respective employees, agents or assigns; (ii) failure, refusal, or neglecting to perform the Owner Services at the times at places and in the manner required to fulfill Owner's obligations under this Agreement; (iii) Owner's breach of the confidentiality provisions of this Agreement; (iv) Owner's breach of the non-compete provisions of this Agreement; (v) Owner's express or implied promotion of other brands other than those brands approved by Company; (vi) Owner appearing visibly intoxicated and/or under the influence of any illegal substance while performing any of the Owner Services, or (vii) any actual or threatened breach of the PIIA or Social Media Policy.

Def.'s Ex. 3-B at § 4(d).

Nothing in this Section can be fairly construed to provide OTK with the authority to take action under the Owners Agreement in response to alleged breaches of the Representation Agreement.

Because the resolution of the breach of contract claims against OTK and King will not require interpretation of the Representation Agreement, Rinaudo can be forced to arbitrate them only if the claims are so inextricably intertwined that they cannot otherwise be resolved. They are not.

<u>**MOTION FOR LEAVE AND RESPONSE TO MOTION TO COMPEL ARBITRATION**</u>                                           10

> C. *Rinuado's breach of contract claims are wholly separate from the declaratory judgment claim.*

Rinaudo alleges in his breach of contract action that OTK and King breached the Owners Agreement when they rescinded his ownership interests in the companies. The declaratory claims are based on Mythic's allegations that Rinaudo owes it approximately $600,000 in overdue management fees under the Representation Agreement for "engaging third party agents to perform Agent Services." Ex. A to *Plaintiff's Original Complaint* at 2.

No provision of the Owners Agreement makes retaining third party agents a breach of that agreement. Likewise, whether OTK was entitled to terminate Rinaudo's interests under the Ownership Agreement is irrelevant to Mythic's claim for purportedly owed management fees. Nowhere in their *Motion* do Defendants identify a single question of fact or law that is common to both actions—aside from their claim that the Owners Agreement allows OTK to take action in response to breaches of the Representation Agreement, which is verifiably untrue.

Defendants devote the remainder of their briefing to kvetching that, if arbitration is not compelled, they will be forced to litigate in multiple fora and be subject to discovery in multiple actions. Perhaps so. But, as the Fifth Circuit has said, "[t]his is an inevitable and permissible consequence where one of multiple defendants asserts a right to arbitrate." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 306 (5th Cir. 2016). "If [Defendants] had truly prioritized their desire to try the case efficiently, they could have foregone arbitration." *Id.*

Defendants have made no showing that either (1) the claims against OTK and King are inextricably intertwined with arbitrable claims against Mythic; or (2) the resolution of the claims against OTK and King will require interpreting the Representation Agreement. Rinaudo is suing OTK and King for breaches of the Owners' Agreement, which, by its terms, never refers to the Representation Agreement and does not incorporate that agreement by reference.

<u>MOTION FOR LEAVE AND RESPONSE TO MOTION TO COMPEL ARBITRATION</u>                                             11

## CONCLUSION AND PRAYER

The core of this dispute is about an alleged sexual assault. The EFAA prohibits compelled arbitration in cases involving sexual assault. Accordingly, there is no grounds to compel arbitration. However, even if the Court concludes that the declaratory action claim against Mythic is arbitrable, only that claim is arbitrable, and the breach of contract claims against OTK and King must proceed in this Court.

WHEREFORE, PREMISES CONSIDERED, Rinaudo prays this honorable Court enter an order GRANTING him leave to file the foregoing *Response,* DENYING Defendants' *Motion to Compel Arbitration* and grant him such other and further relief as to which he may be entitled at law or in equity.

Respectfully submitted,

**BURKE BOGDANOWICZ PLLC**

_____
**AARON J. BURKE**
Texas Bar No. 24073977
*aaron@burkebog.com*
**JUDE T. HICKLAND**
Texas Bar No. 24065416
*jhickland@burkebog.com*
**J. COLLIN SPRING**
Texas Bar No. 24118989
*jspring@burkebog.com*
**ALEXIA P. NICOLOULIAS**
Texas Bar No. 24125817
*anicoloulias@burkebog.com*
**J. HUNTER RALSTON**
Texas Bar No. 24132460
*hralston@burkebog.com*

1201 Elm Street, Suite 4000
Dallas, Texas 75270
Tel/Fax 214.888.2824

**ATTORNEYS FOR PLAINTIFFS
MATTHEW RINAUDO AND MIZKIF
ENTERPRISES LLC**

## CERTIFICATE OF CONFERNCE

The undersigned certifies that he conferred with counsel for Defendants concerning this *Motion for Leave* via telephone on January 7, 2026. At that time, Defendants were considering whether or not to oppose. Because of the exigencies of the circumstance and the need to file quickly, the undersigned did not await a response before filing this *Motion*.

_____
**J. COLLIN SPRING**

**CERTIFICATE OF SERVICE**

    The undersigned certifies that a true and correct copy of the foregoing has been served on counsel for all parties having appeared in this matter via CM/ECF on January 8, 2026.

_____
J. COLLIN SPRING