IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | |
|---|---|
| MATTHEW MISRENDINO a/k/a MATTHEW RINAUDO and MIZKIF ENTERPRISES, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>EMILY BETH SCHUNK, ZACK HOYT, OTK MEDIA INC d/b/a ONE TRUE KING, MYTHIC TALENT MANAGEMENT INC and KING GAMING LABS, INC.,<br><br>    Defendants. | Cause No. 1:25-CV-01773 |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

COME NOW, Plaintiffs Matthew Misrendino a/k/a Matthew Rinaudo and Mizkif Enterprises LLC (collectively "Plaintiffs") complaining of and about EMILY BETH SCHUNK, ZACK HOYT, OTK MEDIA INC d/b/a ONE TRUE KING ("OTK"), MYTHIC TALENT MANAGEMENT, INC ("Mythic"), and KING GAMING LABS, INC. ("King") (collectively "Defendants"). Plaintiffs respectfully show the Court:

**PARTIES, JURISDICTION, AND VENUE**

1. Matthew Misrendino a/k/a Matthew Rinaudo ("Rinaudo") is a natural person and a resident of Los Angeles, California.

2. Mizkif Enterprises LLC ("Mizkif Enterprises") is a limited liability company. Rinaudo is the sole member of Mizkif Enterprises. Accordingly, Mizkif Enterprises is a citizen of California for purposes of diversity jurisdiction.

3. OTK is a Delaware corporation with its principal place of business in Austin, Texas. Accordingly, OTK is a citizen of Delaware and of Texas for purposes of diversity jurisdiction. OTK has appeared through their counsel of record.

4. Mythic is a Delaware corporation with its principal place of business in Texas. Accordingly, it is a citizen of Delaware and of Texas for purposes of diversity jurisdiction. Mythic has appeared through their counsel of record.

5. King is a Delaware corporation with its principal place of business in Texas. Accordingly, it is a citizen of Delaware and of Texas for purposes of diversity jurisdiction. King has appeared through their counsel of record.

6. Schunk is a natural person and a resident of Austin, Texas. She may be served with process at her usual place of business, 1 Chisholm Trail Road, Suite 450, Round Rock, Texas 78861,[1] or wheresoever she may be found.

7. Hoyt is a natural person and a resident of Austin, Texas. He has appeared through their counsel of record.

8. This Court has jurisdiction over this lawsuit because there is complete diversity of the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332.

9. Venue is proper in this District because (1) at least one Defendant resides in this District and all Defendants are residents of Texas, 28 U.S.C. § 1391(b)(1); and (2) a substantial part of the events or omissions giving rise to the claim occurred in this District, 28 U.S.C. § 1391(b)(2).

---

[1] To protect the privacy and safety of Defendants Schunk and Hoyt, who are well-known Twitch streamers, their personal residence addresses are omitted.

## FACTUAL BACKGROUND

10. For the past decade, Matthew Rinaudo has been working tirelessly to build a career in the demanding livestreaming and content creation field, primarily on YouTube, a video sharing platform, and Twitch, a livestreaming platform.

11. Through years of effort, Rinaudo built his online presence under the handle "Mizkif," leading him to a multi-million follower presence across various social media platforms. Rinaudo's entire professional life has, during all relevant times, centered around streaming and content creation.

12. Rinaudo became one of the most successful creators on Twitch with a following of 2.2 million viewers as of October 2025. He was known for collaborating with other streamers, playing video games, and discussing various issues with his followers and subscribers through Twitch's chat feature. In 2021, he won "Best Just Chatting Streamer" at the Streamer Awards.

13. The community that Rinaudo developed, along with his industry connections with other streamers, his personal reputation, and his business goodwill allowed him to develop a successful business with multiple income streams from subscribers, ad placements on his videos, sponsorships, and more.

14. In 2020, along with certain other high-profile streamers including Hoyt, Rinaudo founded the "One True King" media brand and incorporated Defendant OTK, which he remains a part-owner of to this day. Defendant Schunk joined the OTK ownership in 2022.

15. Through the acts and omissions described below, Defendants Schunk, Hoyt, and OTK have, acting in concert, wrongfully and baselessly accused Rinaudo of serious criminal activity for no purpose other than to harm him, his reputation, and his business—and wrest from him control of the companies that he helped build.

16. Rinaudo and Defendant Schunk began dating in 2022. The relationship was not easy on either side. They would routinely face harassment from Schunk's followers, some of whom were stalking Schunk. They got into arguments regularly, and Schunk threatened to kill herself in many of these arguments. Schunk would dress and behave in ways that Rinaudo thought made her unsafe in light of the ongoing stalking from some of her followers.

17. At the end of the relationship, Schunk expressed her desire to marry Rinaudo and raise children within the next five years. Rinaudo, contemplating the tumultuous nature of their relationship to that point, could not agree to do so. He called off their relationship and moved from Austin to Los Angeles in January 2025.

18. Ten months later, on October 25, 2025, Schunk hosted a livestream on Twitch.[2] On the livestream, she lied and baselessly accused Rinaudo of "psychological and domestic abuse, stalking and harassment, sexual assault, and threats of blackmail."[3] These slanderous accusations were made live before an audience

---

[2] Twitch.tv stream, "Just Chatting: talking about some things".
[3] *Id.* at approximately 00:45:30.

of tens of thousands and have since been viewed millions of times across various platforms.

19. In the same livestream, Schunk gives accounts of their relationship that clearly do not support the allegations she levied. For example, in her own description of the purported "sexual assault," Schunk states she and Rinaudo were kissing, he tried to initiate intercourse, she made clear she did not want to, and he stopped, respecting the line that she had drawn[4]:

> *He started kissing me in my face and I let him do it . . . and then suddenly he tried to climb on top of me and aggressively shoved his hands down my pants and I screamed. And when I screamed he jumped off me, like a cat.*

Nonetheless, she continued to defame Rinaudo and portray him as a perpetrator of sexual assault in a video she knew full well would be viewed by millions.

20. Although not an exhaustive list, below are additional false statements made by Schunk during the October 25, 2025 livestream:

   a. That Rinaudo's alleged behavior or acts towards her or "something similar" were allegedly done to someone else[5] or to "other people"[6];
   b. That Rinaudo "indirectly threatened" her and approached other people about a "smear campaign" against her and to "join with him" in assistance[7];
   c. That Rinaudo threatened one of her employees and told him he would "destroy" her if she spoke about him[8];

---

[4] *Id.* at approximately 01:14:30.
[5] *Id.* at approximately 00:47:20.
[6] *Id.* at approximately 00:48:15.
[7] *Id.* at approximately 00:48:45.
[8] *Id.* at approximately 00:49:10.

PLAINTIFFS' FIRST AMENDED COMPLAINT                                         5 of 16

    d. That Rinaudo's plan was to "claim that I kill animals and that I killed my own rabbits"[9];

    e. That Rinaudo was "controlling" over what she wore, who she was friends with, and when she would stream[10];

    f. That Rinaudo would throw objects (bottles, phones, etc.) at her and that one time it gave her a black eye[11];

    g. That Rinaudo was "testing your boundaries" and that his alleged "behavior" got worse over time[12];

    h. That Rinaudo wouldn't let her stream when she wanted to[13];

    i. That in 2024 an incident occurred (involving statements made, behavior, a slammed door that broke, etc.) due to "drops" during his live stream at the same time as her live stream[14];

    j. That the week after the above-referenced 2024 incident, after she announced on a live stream that she would be moving, Rinaudo started "the other domestic abuse stuff" – "destroy furniture", "throw things", "destroy walls", "banging on the door", and "screaming at [her]"[15];

    k. That Rinaudo would drive "like 150 miles an hour" and one time said "now we're both going to die like threatening to kill both of us"[16];

    l. That Rinaudo would "scream" at her while she was asleep as well as throw his phone and yell due to her YouTube video doing better than his[17];

    m. That Rinaudo was "physically aggressive" and speaking in an "angry" tone while at [a friend's] house[18];

    n. That Rinaudo was "screaming" at her due to her cat[19];

    o. That Rinaudo would "hammer into" her and "coach" her about his behavior towards her[20];

    p. That Rinaudo was "manipulating" her, "sexually assaulting" her, as well as the "abuse"[21];

---

[9] *Id.* at approximately 00:49:20.
[10] *Id.* at approximately 00:55:00.
[11] *Id.* at approximately 00:55:30.
[12] *Id.* at approximately 00:56:20.
[13] *Id.* at approximately 00:59:05.
[14] *Id.* at approximately 00:59:50.
[15] *Id.* at approximately 01:05:05.
[16] *Id.* at approximately 01:06:15.
[17] *Id.* at approximately 01:07:15.
[18] *Id.* at approximately 01:08:45.
[19] *Id.* at approximately 01:11:00.
[20] *Id.* at approximately 01:17:10.
[21] *Id.* at approximately 01:24:30.

q. That at a party she "felt" Rinaudo was "following" her, "monitoring" her, and "watching" her and then later made "eye contact" with her and said "'Ooo'"[22];

r. That, despite her being "supportive" of Rinaudo, the "thanks" she got from him was "abuse and resentment"[23];

s. That "for all of 2025", she received "harassment and hatred from him and his community, while he was the whole time secretly begging for me to take him back behind the scenes"[24]; and

t. In closing the stream, she reiterated some of the same allegations as previously mentioned (quoted above) and continued with "that's my story of dealing with abuse, psychological and domestic abuse, sexual assault, and stalking, and being threatened"[25].

21. That very same day, OTK sent Rinaudo a letter purporting to terminate his interest in the company. OTK claimed it was entitled to do so based on "the nature of Emiru's Allegations [sic]." "Emiru" is the handle under which Defendant Schunk operates her streaming and content creation business. OTK's letter is attached hereto as **Exhibit A.**

22. This letter asserted a number of purported breaches of the Owners Agreement. No such breaches occurred. Nonetheless, OTK asserted that it was reclaiming Rinaudo's 1,109,139 shares of OTK without payment.

23. This letter further asserted Rinaudo owed amounts in excess of $600,000 to Mythic for "management fees" relating to purported breaches that did not occur. Through OTK, Mythic demanded repayment of these allegedly owed fees.

---

[22] *Id.* at approximately 01:30:25.
[23] *Id.* at approximately 01:44:55.
[24] *Id.* at approximately 01:45:00.
[25] *Id.* at approximately 01:46:20.

PLAINTIFFS' FIRST AMENDED COMPLAINT                                    7 of 16

24. Further, the letter falsely asserted Rinaudo violated its agreement with King, purported to reclaim Rinaudo's 93,012 shares of stock in King, and demanded payment of $296,401.92 as a result of purported breaches that, again, did not occur.

25. Mythic, King, and OTK made no serious investigation or inquiry into the basis for or truth of Schunk's allegations before repudiating their agreements with Plaintiffs. Indeed, Mythic, King, and OTK did not even ask Rinaudo for comment or any information in his possession disproving the allegations. Instead, a few days after Schunk's defamatory livestream, OTK—perpetuating the defamation—put out a statement on X (formerly known as Twitter) that it "fully supports its co-owner and sister Emiru and . . . stand[s] by her side and admire[s] her strength in coming forward and sharing her story." In this statement, OTK falsely claimed it had terminated its relationship with Rinaudo "some time ago for reasons unrelated to the recent events."



26. Hoyt, who streams under the handle Asmongold, is a part owner of OTK. Since Schunk's livestream, Hoyt has continuously defamed Rinaudo on a near-daily basis. He has claimed *inter alia* Rinaudo should be in jail, claimed he was abusing and manipulating others, hurting other people, and becoming an aggressor.

27. For example, in a livestream that has since been uploaded to YouTube where it garnered 1.9 million views as of the date of this filing[26], Hoyt states directly that Rinaudo was "the aggressor and abuser" in the relationship with Schunk. Hoyt would then qualify his statement by saying "at least allegedly," but disclaimed that disclaimer itself by saying he "has to say that for legal reasons."[27]

---

[26] Live stream on October 26, 2025 (timestamp references are only to the hour-long segment Hoyt dedicated to Mizkif's stream).
[27] *Id.* at approximately 00:22:45.

28. Hoyt made repeated comments about other alleged sexual assaults by Rinaudo but provided no specifics—because there are no specifics to be provided.[28]

29. Hoyt has on a near daily basis reaffirmed the "truth" of Schunk's allegations before his millions of followers.[29]

30. Hoyt also claimed on his livestream that there was another (again unspecified) act of misconduct that was the reason Rinaudo was removed from OTK. This is in direct contrast to OTK's own account as provided in its letter of October 24.[30]

31. Hoyt falsely accused Rinaudo of threatening Schunk's employees at TwitchCon, a recent streaming convention.[31]

32. Hoyt has enriched himself personally by advertising revenues and subscription fees garnered from his smear campaign against Rinaudo. Even some of Hoyt's own viewership noted he was "dramabaiting for views."[32]

33. Although not an exhaustive list, below are additional false statements made by Hoyt during the October 26, 2025 livestream:

    a. That Rinaudo was "hurting other people and manipulating and taking advantage of other people" and becoming "an aggressor"[33];
    b. That "there are other stories of things that will be points on the same graph making the same line", that he was "being serious" about an alleged other event, and that "the story" would include "five other witnesses"[34];

---

[28] *Id.* at approximately 00:27:10; at approximately 00:57:50.
[29] *Id.* at approximately 00:53:30.
[30] *Id.* at approximately 00:39:55.
[31] *Id.* at approximately 00:38:55.
[32] *Id.* at approximately 00:36:55.
[33] *Id.* at approximately 00:10:25.
[34] *Id.* at approximately 00:27:10.

PLAINTIFFS' FIRST AMENDED COMPLAINT                                              10 of 16

    c. That Rinaudo "multiple times…tried to invade [Schunk's] private life and cause problems for her privately and make things worse for her and also damage her career, saying negative things about her to people privately, trying to say bad things publicly, also maybe indirectly, letting his community do that"[35];

    d. That "people like that actively will try to sabotage you and damage your life – that's another thing, too – like this hasn't really come out yet, but there will be instances of this happening" and that said "instances" would be revealed or come out in "a couple of days"[36];

    e. That he would "tell the story why Miz was removed from OTK" and "it had nothing to do with this"[37]

    f. That Rinaudo said that he would "destroy" Schunk[38];

    g. That "yeah it was" the plan for Rinaudo to use Schunk's rabbits against her[39];

    h. That "it's just bull****" that Rinaudo says Schunk's rabbits were being abused[40];

    i. That Rinaudo was "abusive, aggressive, and hostile to other people and actively try to damage them"[41];

    j. That Rinaudo was "performing actions" and "doing things that hurt other people"[42];

    k. That Rinaudo was "threatening to destroy [Schunk] in LA"[43];

    l. That Rinaudo was "disloyal to us" and "lied to us about the [Schunk] situation to begin with in order to maintain, you know, his position in the company"[44];

    m. That he "[knew] what happened", he "[knew] something about a situation", he "[knew] things", and "these are just things that straight up happened" relating to the allegations made by Schunk and/or OTK against Rinaudo [45];

---

[35] *Id.* at approximately 00:30:40.
[36] *Id.* at approximately 00:31:35.
[37] *Id.* at approximately 00:39:55.
[38] *Id.* at approximately 00:41:30; at approximately 00:42:25.
[39] *Id.* at approximately 00:44:20.
[40] *Id.* at approximately 00:45:15.
[41] *Id.* at approximately 00:49:10.
[42] *Id.* at approximately 00:49:45.
[43] *Id.* at approximately 00:52:00.
[44] *Id.* at approximately 00:53:30.
[45] *Id.* at approximately 00:54:35.

n. That Rinaudo is a "liar", Rinaudo "lied to OTK multiple times about really big things", and Rinaudo was "lying to us, the entire time"[46]; and

o. That Rinaudo was involved in "a year-long, multi-year long, ongoing cycle of abuse that affected multiple people – it was not just [Schunk], it was other people as well"[47].

34. The combined, coordinated actions of Schunk, Hoyt, OTK, Mythic, and King have caused serious and lasting damage to Rinaudo's personal reputation and his business. Since the defamation occurred, Rinaudo has been losing followers and subscribers on a daily basis. Rinaudo anticipates the loss of existing sponsorships and increased difficulty in securing future sponsorships.

35. Regretfully, the extreme nature of the misconduct here has compelled Rinaudo to file suit.

## COUNT ONE – BREACH OF CONTRACT (OTK, KING)

36. Plaintiffs incorporate the allegations of paragraphs 1 through 26 by reference as if set forth fully herein.

37. OTK breached its Ownership Agreement with Rinaudo by purporting to oust him from ownership when no event of breach or default giving it authority to take such action had occurred.

38. OTK acknowledged it took no effort to investigate the alleged breaches, claiming in its own words that "OTK is not involved in, nor aware of the content of, such personal matter that [Rinaudo] or Emiru may have with each other." Nonetheless, OTK anticipatorily breached its contract with Rinaudo based on Schunk's allegations.

---

[46] *Id.* at approximately 00:55:35.
[47] *Id.* at approximately 00:57:50.

39. Similarly, King breached its agreements with Plaintiffs by purporting to divest them of their stock in King when no breach or event of default permitting same had occurred.

40. These breaches of contract have caused damage to Plaintiffs by purporting to divest them of over a million shares of stock owned in OTK and King.

## COUNT TWO – DEFAMATION (SCHUNK, HOYT)

41. Plaintiffs incorporate the allegations of Paragraphs 1 through 32 of the Complaint as if set forth fully herein.

42. Defendants Schunk and Hoyt have repeatedly published untrue, defamatory statements concerning Rinaudo to an audience of millions, painting him as a rapist, domestic abuser, and emotional abuser.

43. These statements were made with actual malice. Schunk and Hoyt knew at the time that they published these statements that they were false. On belief and information, Schunk and Hoyt knew they stood to benefit from Rinaudo's ouster from OTK and the associated companies and coordinated the timing of their statements to maximize the injury inflicted to Plaintiffs.

44. These statements have caused severe damage to Plaintiffs' reputation and business and have caused severe emotional distress and mental anguish.

## COUNT THREE – DECLARATORY JUDGMENT (OTK, MYTHIC, KING)

45. Plaintiffs incorporate the allegations of Paragraphs 1 through 25 of the Complaint as is set forth fully herein.

46. An actual controversy exists between Plaintiffs, OTK, Mythic, and King concerning the purported breaches that Defendants allege Plaintiffs committed and the efficacy of Defendants' attempts to unlawfully divest Plaintiffs of their interest in the companies.

47. An actual controversy exists between Plaintiffs, OTK and Mythic concerning the amounts demanded by OTK and Mythic for unlawful "management fees" which are neither due nor owing.

48. An actual controversy exists between Plaintiffs and OTK concerning the wrongfully accelerated promissory note, which OTK had no legal basis to make demand upon.

49. The Court has jurisdiction to issue declaratory judgment under 28 U.S.C. § 2001 et seq.

## ATTORNEYS' FEES

50. Based on the actions of OTK, Mythic, and King, Rinaudo has been forced to retain the undersigned counsel to protect his interests and is accruing legal fees. Pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, Rinaudo and Mizkif Enterprises are entitled to recovery their reasonable and necessary attorneys' fees. They are further entitled to attorneys' fees under Tex. Civ. Prac. & Rem. Code § 37.009 in connection with the declaratory relief sought. Plaintiffs further claim any entitlement to attorneys' fees that they may have at law or in equity.

## DAMAGES

51. Plaintiffs have been damaged by the acts and omissions of the Defendants in the following ways:

   a. Reputational harm;

   b. Loss of business goodwill;

   c. Loss of earnings;

   d. Loss of future earning potential;

   e. Emotional distress; and

   f. Mental anguish.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Rinaudo and Mizkif Enterprises pray this honorable Court, after trial, enter judgment against Defendants:

   (i)    Awarding him such damages as determined by the finder of fact;

   (ii)   Awarding him his reasonable and necessary attorneys' fees;

   (iii)  Awarding him pre- and post-judgment interest at the maximum rate allowable by law;

   (iv)   Declaring that OTK, King, and Mythic have no claims against Plaintiffs;

   (v)    Declaring that OTK and King's attempts to divest Plaintiffs of their interests in the companies at issue were ineffective as a matter of law; and

(vi) Granting such other and further relief as to which Plaintiffs may prove themselves entitled at law or in equity.

Respectfully submitted,

**BURKE BOGDANOWICZ PLLC**

_____
**AARON J. BURKE**
Texas Bar No. 24073977
*aaron@burkebog.com*
**JUDE T. HICKLAND**
Texas Bar No. 24065416
*jhickland@burkebog.com*
**J. COLLIN SPRING**
Texas Bar No. 24118989
*jspring@burkebog.com*
**ALEXIA P. NICOLOULIAS**
Texas Bar No. 24125817
*anicoloulias@burkebog.com*
**J. HUNTER RALSTON**
Texas Bar No. 24132460
*hralston@burkebog.com*

1201 Elm Street, Suite 4000
Dallas, Texas 75270
Tel/Fax 214.888.2824

**ATTORNEYS FOR PLAINTIFFS MATTHEW MISRENDINO A/K/A MATTHEW RINAUDO AND MIZKIF ENTERPRISES LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been served on counsel for all parties having appeared in this matter via CM/ECF on January 22, 2026.

_____
**J. COLLIN SPRING**