## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| MATTHEW MISRENDINO a/k/a MATTHEW RINAUDO and MIZKIF ENTERPRISES, LLC, | § § § § § | |
| Plaintiffs, | § § | Case No. 1:25-cv-01773-RP |
| v. | § § | |
| EMILY BETH SCHUNK, ZACK HOYT, OTK MEDIA, INC. d/b/a ONE TRUE KING, MYTHIC TALENT MANAGEMENT INC. and KING GAMING LABS, INC., | § § § § § § | |
| Defendants. | | |

### DEFENDANT ZACK HOYT'S AMENDED MOTION TO DISMISS

Defendant Zack Hoyt (hereinafter "Hoyt") moves to dismiss Plaintiffs' Amended Complaint (Dkt. 25) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and in the alternative, moves for a more definite statement under Federal Rule of Civil Procedure 12(e).

### SUMMARY OF ARGUMENT

Plaintiffs Matthew Misrendino (hereinafter "Mizkif") and a separate LLC, Mizkif Enterprises, LLC, bring this lawsuit alleging, *inter alia*, defamation against Hoyt. Mizkif streams and promotes his own videos under the name "Mizkif". Pl. Am. Compl. (Dkt. 25) at ¶ 11-12. Mizkif accuses Hoyt of making defamatory statements about him, primarily in a single video where Hoyt is providing opinions and commentary about Mizkif's *own* video confessions regarding his *own* behavior.

Mizkif is a public figure, Pl. Am. Compl. (Dkt. 25) ¶¶ 10-14, 23-24 (describing Plaintiff's lifelong pursuit of being a public figure and statistics about his publicity), who now complains that Hoyt—after listening to and reading *Mizkif's own public statements*—gave commentary about Mizkif's public statements. Mizkif, however, will not give the Court any of that context in a pleading, or it would be obvious that nothing he is upset about is actionable as a defamation claim.

For context, these are quotes from Mizkif's own video where he describes his own behavior in the video that Defendant Hoyt was commenting about:

**"I punched holes in the walls or slammed doors in aggression."** Mizkif, *The Truth*..., YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=830s[1]     (at     13:53) (emphasis added).[2]

"I'm not going to go back to the place I once was. I was suicidal, depressed, and taking every type of drug possible to fix my brain. And in doing that I hurt myself more. I was on steroids because I thought it would fix myself. I was taking shrooms every day to fix my brain, but that destroyed me. I tried acid and that backfired. **In doing that I know I effed up so bad and hurt so many people around. I**

---

[1] Defendant Hoyt has included links for the Court's convenience rather than entering video exhibits into evidence, in part because the links contain the appropriate timestamp to give exactly the right point in the video, and to save the Court time looking it up.

[2] Defendant Hoyt is not attaching evidence to his Rule 12 motion, but has included the words and link to the video that Plaintiffs appear to complain about so that the Court may be aware of how much Plaintiffs chose to omit from the Amended Complaint in order to try to twist something into sounding like a defamation claim where the context makes it obvious no claim exists. Curiously, Plaintiffs have now added timestamps to their Amended Complaint, but still chose not to: (1) include a copy of—or link to—the video they are referring to, or (2) provide the actual complete statements. They cannot do so, because doing so makes it obvious that their claim should be dismissed. Their actions in response to the original Motion to Dismiss, Dkt. 20, speak even more loudly to the baselessness of their claims than any words Defendant Hoyt can offer.

**lashed out, I was angry, and out of my mind.**" Spanix Team, *Spanixlogs* (Oct. 27, 2025) (archiving chat logs from streams), https://logs.spanix.team/?channel=mizkif&username=mizkif (extra return carriages omitted from quotes gathered from chat transcript as seen in included screenshot) (screenshot taken Jan. 7, 2026) (emphasis added).[3]

**"I did take steroids that gave me insane anger issues.**" Spanix Team, *Spanixlogs* (Oct. 27, 2025), https://logs.spanix.team/?channel=mizkif&username=mizkif (extra return carriages omitted from quotes gathered from chat transcript as seen in included screenshot) (screenshot taken Jan. 7, 2026) (emphasis added).[4]

**"I said that 'if she goes after me, then I will go nuclear.' And that is exactly what I said. And that is what is going to happen.**" Mizkif, *The Truth...*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=1232s (at 20:32)

---

[3] Below is a screenshot of the chat log:



[4] The same quote may be seen in the middle of the screenshot in the note above this one.

(emphasis added).

–*Plaintiff, Matthew Misrendino, a/k/a "Mizkif" about himself and his relationship with Emiru a/k/a Defendant Emily Beth Schunk (hereinafter "Emiru")*

Mizkif openly admits that he was violent, hurt people, lashed out, had "insane anger issues," took a host of drugs, and then told Emiru that he would "go nuclear" on her when for publicly speaking about what happened. Mizkif, *The Truth…*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=1232s (at 20:32). Mizkif likewise admits that, in his relationship with Emiru, he slammed doors and punched holes in the walls "in aggression." Mizkif, *The Truth…*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4AazJ0g&t=830s (at 13:53).[5] And that is all before any alleged commentary by Defendant Hoyt.

Yet Texas law requires courts to review allegedly defamatory statements for the "gist" of the meaning considering the surrounding circumstances. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 628 (Tex. 2018) ("we held that '[i]n making the initial determination of whether a publication is capable of a defamatory meaning, we examine its 'gist.' That is, we construe the publication 'as a whole . . . .'" (quoting *D Magazine Partners, LP v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017)).[6]

---

[5] Mizkif posted a video of himself talking on his own channel where he admits to behavior, and it even includes a clip that he himself apparently added after he speaks, where another well-known streamer comments about Mizkif and proclaims that "the throwing stuff around" at Emiru was "more than likely malicious" and that "he [Mizkif] would have to atone for that." *Id.* at 26:19. Mizkif has notably not sued that streamer for defamation, raising a question as to whether Mizkif's defamation claims against Hoyt and Schunk are only make-weight claims he needs for indirect leverage against corporate defendants in this matter.

[6] Plaintiffs appear to *only* be making this type of defamation claim—reading into Hoyt's alleged phrases. They avoid including full sentences or anything prior to what they are quoting and instead add their own color and framing around a few words here and there, *see, e.g.*, Dkt. 25 at

Thus, Plaintiffs must provide, to state a claim for relief, the allegedly defamatory statements, and, for defamation by publication, the *publication*. But those are missing from even the Amended Complaint, making clear that Plaintiffs' lawsuit is a proverbial car without an engine—it can go nowhere.

Plaintiffs fail to meet the standard required by Rule 12 for that and other reasons. But at its most basic, Hoyt is entitled to know *what* the actual statement(s) is, so that it may be understood in context. Plaintiffs must put a publication into dispute to the extent they are arguing—as they seem to be—that the publication is the source of the claim. Hoyt believes, from what little he can gather from the pleading, that his alleged statements are either direct and fair reporting of Mizkif's own words, opinions about them, or other non-actionable and constitutionally-protected activity. The Amended Complaint only makes that even clearer: the alleged statements all appear to be commentary about (and interspersed with) Mizkif's own admissions about his own bad behavior and about harming others. But it is unclear what Plaintiffs complain about, *particularly considering that Mizkif said these same things about himself*.

Hoyt refuses—and the law agrees with him—Plaintiffs' invitation to get inside of the head of an admitted angry, violent, drug user who "goes nuclear" on people and *then* try to guess at what *Plaintiffs* characterize as "manipulating" or "hurting" others.[7] And Defendant Hoyt contends—with a surfeit of reasons—that he cannot be held liable under the law for things that Mizkif had publicly admitted

¶ 26 (insisting that *Hoyt* said that Mizkif was an "aggressor," compared to the actual quote, which was Hoyt giving a constitutionally-protected opinion while responding directly to Mizkif's statements, which he had just aired, about Mizkif being aggressive, punching holes in walls, and lashing out at people: "I think that he's using this, again, to obfuscate and to…what's a way to say it…to muddy the waters to kind of the hostilities between them. He's basically trying to shift the relationship where he was the aggressor and the abuser, at least allegedly, I've got to say this for legal reasons, towards Emiru, and shift this into 'we were both wrong.'").

[7] Plaintiffs filed an Amended Complaint, however, they have declined to remedy that issue, and, in fact, include the same language about "hurting" and "manipulating" in the new Complaint.

about himself.

## FACTUAL BACKGROUND

Mizkif is a public figure with millions of online followers, constituting his primary profession. Pl. Am. Compl. (Dkt. 25) at ¶¶ 10–12.[8] Hoyt is also a public figure with millions of online followers. Pl. Am. Compl. (Dkt. 25) at ¶ 27. Hoyt is also a part owner of Defendant OTK. Pl. Am. Compl. (Dkt. 1) at ¶ 26.[9]

Since at least 2023, Mizkif has made himself notorious on account of his reputed violence and aggression. For example, Mizkif can be seen in one online video which demonstrates this. In the video, Mizkif is in the middle of a street slamming his brakes and engaging in an altercation, followed by screaming at a man crouched on a curb in the middle of an Austin neighborhood. The man is a fellow public figure, Mr. Jones, who claims that Mizkif hit him until he was "knocked out cold" when "he [Mizkif] continued to beat on my face." SS7, *MIZKIF BEATS MITCH JONES FIST FIGHT*, YouTube (Feb. 6, 2024), https://www.youtube.com/watch?v=qHc509c0PmA&t=15s (at 00:15). Mr. Jones can be seen on the video with bruises and marks on his neck.

Mizkif also got into a physical altercation with an owner of OTK *at a company meeting*. Mizkif recently admitted he had an incident with Nick, a part owner of OTK. Zack Hoyt, *Capture of livestream from Mizkif* (Jan. 2, 2026) (on

---

[8] Plaintiff Mizkif Enterprises, LLC is *allegedly* also a plaintiff as to the defamation claim against Hoyt, Pl. Compl. (Dkt. 1) at ¶¶ 38, 41 ("**Plaintiffs** incorporate . . ." and "**Plaintiffs'** reputation"), even though the entire Complaint never references any statement about or allegation concerning statements about Plaintiff Mizkif Enterprises, LLC. *See, e.g.*, Pl. Compl. (Dkt. 1) at ¶ 40 (basing their claim upon "statements concerning Rinaudo [i.e., Mizkif]").

[9] Importantly, these two Plaintiffs filed a larger suit against OTK and two other corporate entities ("Corporate Defendants") after disputes arose among them, including alleged violations of Mizkif's Representation Agreement. Pl. Compl. Ex. A (Dkt. 1-1) at 2 ("As such, Mythic is entitled to more than $600,000 in overdue Management Fees . . . ."). The Corporate Defendants have filed a Motion to Compel Arbitration and Stay the litigation which remains pending. *See* Dkt. 17. Plaintiffs also added to their complaint this lone defamation claim against Hoyt, a part owner of OTK (a Corporate Defendant).

file with author) (available at
https://www.dropbox.com/scl/fi/t91tpct1px00wfisdxazf/Mizkif-reveals-the-
altercation-was-with-Nick-Nmplol.mp4).

More recently, Mizkif was in a romantic relationship with Emiru that he
claims was "toxic" and violent. He attempted to shift blame for violence in his
relationship by stating, *before any statement by Hoyt*, that Emiru, a very petite
young woman, "was also violent." Mizkif describes that "violence" further: she
would throw a plushie or clothing at him, though he admits to bruising her face by
throwing things at her, slamming doors, and punching holes in walls. Mizkif, *The
Truth...*, YouTube (Oct. 26, 2025), https://www.youtube.com/watch?v=v_na4Aaz
J0g&t=830s (at 13:53). Unsurprisingly, the world did not love Mizkif's own
admissions about his violence when he began to equate a petite young woman
allegedly throwing a plushie and his punching holes in walls and throwing objects
at her in a fashion that was "more than likely malicious." *See, infra at note 5*.

Mizkif now feigns shock at why people think poorly of him after he said what
he did, completely omitting all of his own words. And all of that happened before
Defendant Hoyt uttered any word at issue here.

Against that backdrop, Plaintiffs *then* filed this suit, claiming a variety of
harms regarding these circumstances that are somehow not self-inflicted, but the
alleged fault of others.[10]

---

[10] Plaintiff may well be filing this suit for a reason beyond the claim itself, so that the Court is
aware: he appears likely to have filed this case, despite its lack of merit, in federal court, where
anti-SLAPP remedies are largely unavailable, specifically in order to silence public criticisms of
him by threatening others with litigation, citing this case for as long as he can keep it kicking,
hoping to silence protected speech, particularly from those whom he has harmed, and from those
who are unable to mount a legal defense in this Court. The Court should be aware that the real
targets of this suit are likely third parties who might wish to publicly agree with Mizkif that he has
acted inappropriately and made a fool of himself. Though beyond this Motion, Mizkif's recent
litigation threats to third parties and posts of videos of himself buying a suit for court, for instance,
lend credibility to that idea.

**ARGUMENT**

This case is admittedly *unique*: Mizkif has chosen to file a federal lawsuit against Defendant Hoyt about things that he publicly admitted, which causes his defamation claim to collapse on multiple elements simultaneously—in ways that can overlap. For instance, we are talking about public figures, so the Plaintiffs must prove that Defendant Hoyt still somehow said these things with the requisite intent, as discussed in Section V, *infra*: in this case, Plaintiff must show Defendant Hoyt acted with actual malice, proven by clear and convincing evidence—the highest burden of proof in civil law. How can Defendant Hoyt have had that intent if Plaintiff just said these things, or close enough to these same things? Yet how can there be damages to Plaintiff, then, or causation of damages, either? And how could the statements be false, since Defendant Hoyt had—and was quoting from—Plaintiff's own statements that he had just made? And how can the statements even be *perceived* as defamatory, if they are coming from and are about Plaintiff's own admissions? These questions are not merely rhetorical, as the gravamen of the complaint appears to be that Mizkif does not like what Mizkif himself admitted, and what people thought about that—but that problem existed before Defendant Hoyt even entered the discussion. This motion will begin with the last question, but addresses all of them, and why they all mitigate in favor of dismissal.

Plaintiffs' defamation claim fails the Rule 12(b)(6) standard as to Hoyt for several independent reasons.

First, Plaintiffs fail to allege facts sufficient to state a cause of action for defamation under Texas law. *See* Section I, *infra*.

Second, the claim fails to clarify what the allegations are such that Hoyt can join them in defense or even know what Plaintiffs are talking about. *See* Section II, *infra*.

Third, Plaintiffs base their claims, in part, upon allegations of defamation

that are time-barred under Texas law. *See* Section III, *infra*.

Fourth, Mizkif already admitted to the very things Plaintiffs claim are defamatory, which prohibits them from proceeding with making out a defamation claim under Texas law. *See* Section IV, *infra*.

Fifth, Plaintiffs fail to allege facts sufficient to show actual malice or falsity. *See* Section V, *infra*.

## I.    Plaintiffs fail to allege facts sufficient to state a cause of action for defamation under Texas law because they failed to allege defamatory statements or statements that are not opinion.

Plaintiffs fail to put before the Court a complete statement or a source for any statement that they are allegedly concerned about—because whatever statement they are concerned about is not actionable as a matter of law.[11]

Plaintiffs have had two opportunities now, but they still neglect to give Hoyt or the Court the statement(s) as a whole, or even the better portion of it, or include their source for it. They now apparently *have* the whole statements—as well as Mizkif's own various confessions and quotes therein—but have failed to disclose them. *See, e.g.*, Dkt. 25 at ¶ 26 (mentioning an unspecified portion of a live stream without further reference, yet citing something with various timestamps in the footnotes thereafter). Both Hoyt and the Court will need to evaluate each statement to see *whether the statement is even actionable* or capable of a defamatory meaning.

Hoyt still expects that Plaintiffs can reveal nothing more than opinions, which are both constitutionally protected under the First Amendment and Texas law, and also not actionable, *Tatum*, 554 S.W.3d at 623, which is the reason

---

[11] This is especially true considering Plaintiffs' intense burden of proof: "A public figure already bears the substantial burden of proving actual malice by clear and convincing evidence." *Turner v. KTRK Television*, 38 S.W.3d 103, 116 (Tex. 2000); *New York Times Co. v. Sullivan*, 376 U.S. 254, 288–89 (1964).

Plaintiffs' complaint is devoid of the required details. The only clip Plaintiffs appear to be mentioning is a clip of Defendant Hoyt giving public commentary a la a talk TV show about Plaintiff's own public broadcast.

Plaintiffs likely complain only about opinions, fair reporting, truthful statements, or even someone repeating Mizkif's own words—we cannot be sure. We cannot even know with certainty from the Amended Petition which portions of which things were allegedly said that upset Plaintiffs. Yet this is key: the parties produce hours upon hours of video *daily*, and Hoyt has a right to know *what* the actual complaint is about.

Yet Texas law puts this burden firmly on Plaintiffs as a threshold question. "In a defamation case, the threshold question is whether the words used 'are reasonably capable of a defamatory meaning.'" *Tatum*, 554 S.W.3d at 624 (citation omitted); *Turner*, 38 S.W.3d at 114 (holding "an allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it"); *In re Lipsky*, 460 S.W.3d 579, 594 (Tex. 2015) ("It is well settled that 'the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements.' This is also true in determining whether a publication is an actionable statement of fact or a constitutionally protected expression of opinion.") (citing *Bentley v. Bunton*, 94 S.W.3d 561, 579, (Tex. 2002))). The Texas Supreme Court instructs that, "[w]hether a publication is capable of a defamatory meaning is initially a question for the court." *Turner*, 38 S.W.3d at 114; *In re Lipsky*, 460 S.W.3d at 594 (requiring same and listing out the actual statements cited as potentially defamatory).[12]

---

[12] Texas district courts likewise routinely dismiss allegations that fail to plead a defamation claim

Texas courts also require plaintiffs to adduce statements "not presented as opinion,"—unlike the commentator video which Plaintiffs now appear to be aiming at in this suit—and "'sufficiently factual to be susceptible of being proved true or false.'" *In re Lipsky*, 460 S.W.3d at 595 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, (1990)); *Bentley*, 94 S.W.3d at 583 (noting that whether statements can be defamatory depends upon "their verifiability and the context in which they were made").

Under these guidelines, Plaintiffs face obvious problems with their allegations about Hoyt.[13]

### A. Repeating someone's statements about themselves cannot give rise to a defamation claim by that same person.

First, Hoyt's alleged statements are his commentary on and interpretation of *Mizkif's own video and written admissions* to things such as violence, drug abuse, anger, maliciousness, and aggression. By definition, Mizkif cannot sue Hoyt for defamation for simply repeating and agreeing with some of Mizkif's own

---

with sufficient specificity so that the reviewing court can ascertain the allegations considering the pertinent legal standards of review. *See, e.g.*, Order Granting Def. Tiffany Quini's Mot. to Dismiss, *Manbeck v. Quini*, No. D-1-GN-22-003217 (Travis Cty. Dist. Ct. Nov. 18, 2022) (dismissing defamation claim for failure to adequately identify allegedly defamatory statements to allow for the statement to be reviewed in context as required by law, particularly where the statements involve video or streaming with numerous third-party interactions as part of the context, and where statements are statements of opinion).

[13] Procedurally, this is Defendant Hoyt's Second Motion for Dismissal, after Plaintiffs filed their First Amended Complaint (Dkt. 25). Plaintiff's original complaint omitted any allegedly defamatory statements, aside from four words ("the aggressor and abuser," Pl. Compl. (Dkt. 1) at ¶ 26) and an allusion to "truth," id. at ¶ 27. Defendant Hoyt filed a Motion to Dismiss initially, noting that the Plaintiff "Rinaudo," was merely an alias, that the LLC has no allegations about defamation in the Complaint, and that Plaintiffs failed to plead their defamation claims with sufficient detail such that Hoyt could respond. Def.'s Motion to Dismiss (Dkt. 20). Plaintiffs responded with an Amended Complaint that at least added Mizkif's real name as a Plaintiff, but ignored the other problems. The Amended Complaint still makes no allegations about defamatory statements made about LLC. And instead of giving the actual publication or the statements that form the basis of Mizkif's defamation claim, Plaintiff Mizkif added a few more words he dislikes from within a single video clip, though sometimes shifting and rearranging words from the same exact sentence—and rearranged those into a list that still neither provides the context, the full publication and/or statement, nor remedies the problems identified in the original Motion to Dismiss. Dkt. 20.

statements.

Plaintiffs must show that the statements they allege are defamatory. *Tatum*, 554 S.W.3d at 623. As noted above, Mizkif made a host of admissions on his own which are already part of the context of Hoyt's statements and preclude Mizkif from seeking reputational damages as to things *he already said about himself*.[14] That alone kills Plaintiffs' complaint: Mizkif already said these things, which precludes him from seeking further relief. Plaintiffs omit this from the Complaint, because including it would make apparent that Plaintiffs lack a valid defamation claim.

The Court could readily read and interpret, as any reasonable person might, *see Turner*, 38 S.W.3d at 114 (holding "an allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it"), looking at the statements themselves, had the full sentences and full publication been attached. Then it would become clear that Plaintiffs' claim is largely a complaint about Plaintiffs' own admissions.

### B. Plaintiffs rely upon their *interpretation* of what Defendant Hoyt said instead of providing the actual full statements by Hoyt.

Second, Plaintiffs repeatedly rely upon self-serving interpretations of whatever is alleged that Hoyt said, making it difficult for Hoyt—a public commentator who had been asked about Mizkif—to know what Plaintiffs are complaining about.

This is seen the most clearly in paragraph 26 of Plaintiffs' Amended

---

[14] Note that this is somewhat similar to, but distinct from, Section IV, *infra*, which points to the problems with inferring damages from things that the Plaintiff has already said. Here, the Plaintiff has a problem because, when read in the publication, the statements do not appear defamatory in the first place.

Complaint, which also appeared in their original complaint, and merely alleges that he understood Defendant Hoyt to be saying that he hurt or manipulated others, and/or was an "aggressor." All of that is Plaintiff's interpretation of *something*—but of *what*, we are largely left to guess. (And even more perplexing is that Plaintiff himself had said some of these things about himself. *See, e.g.*, note 5, *infra*.)

Plaintiffs' Amended Complaint included a new example of this exact type of problem, in paragraph 28, where it alleges that Defendant Hoyt referred to "other sexual assaults," words which Plaintiff had to add in the Complaint, when, in fact, Defendant Hoyt never says "sexual assault" where they refer to it, and seems to be referring generally to Mizkif's own behavior which he had already admitted to, and, in fact, Defendant Hoyt can be seen in another portion they appear to be referring to offering what is obviously his constitutionally-protected opinion about Mizkif's own statements, "to marginalize this and to say that it was a 'toxic relationship,' [as Mizkif had on video]" ignored the larger context and the admissions that Mizkif had made.

Plaintiffs largely give a raft of after-the-fact characterizations of something that Mizkif perceived: that "[Mizkif] should be in jail, claimed he was abusing and manipulating others, hurting other people, and becoming an aggressor." Pl. Compl. (Dkt. 1) at ¶ 26; Pl. Am. Compl. (Dkt. 25) at ¶¶ 26, 33 at subpoint a. If anything, Plaintiff's Amended Complaint does little to improve upon Original Complaint: For instance, it now appears to tie the comment about "hurting" people to Defendant Hoyt's explanation of his own feelings and whether he sympathizes with Mizkif, based upon Mizkif's own video explanations of his own conduct—but whether or not Defendant Hoyt sympathizes with Mizkif or not is not an actionable statement. Moreover, Plaintiffs decline to provide the publication from where these words allegedly came.

### C. Plaintiffs fail to provide full statements by Hoyt, and instead rely on a list of cherry-picked words and phrases with no context.

Third, the Plaintiffs amended their complaint to add a list of potential cherry-picked words, Pl. Am. Compl. (Dkt. 25) at ¶ 33, but decline to provide the full sentences and/or publications themselves. In one example, his Amended Complaint now makes much of whether or not he said that he would 'destroy' Schunk. In his own video, however, Misrendino says that he told Schunk's people that: "I would go nuclear. And that is exactly what I said. And that is what is going to happen."[15] Defendant Hoyt is unaware of a sense in which "go nuclear" does not also intend or imply destruction.  Again and again, Plaintiffs declined to provide the context of the allegedly defamatory statements as they are required to do, in order to conceal the baseless nature of their defamation claim.

### D. Hoyt's statements are his opinions and not actionable.

Fourth, Plaintiffs seem to be complaining primarily about Hoyt's opinion. For instance, Plaintiffs complain about a reference to "hurting" someone, without giving the full sentence, which would show that the comment itself is about when Defendant Hoyt may or may not choose to empathize with another party. Plaintiff's allegation about "jail," Pl. Am. Compl. at ¶ 26, discussed below, likewise omits the full quotation, which would show that Defendant Hoyt offered an opinion about what might happen someday in the future if Mizkif made *yet more* bad choices in addition to the ones he had already admitted to.

Speculating about the future is both opinion and not defamatory at all.

We cannot know that for sure as to all alleged quotes, because Plaintiffs refuse to fully identify which statement(s) are problematic amidst the thousands of hours of online content the parties publish, but the sparse quotes Plaintiffs have

---

[15] Mizkif, The Truth…, YouTube (Oct. 26, 2025),
https://www.youtube.com/watch?v=v_na4AazJ0g&t=1232s (at 20:32) (emphasis added).

provided all appear to be statements of opinion—literal commentary about Plaintiff Misrendino's own video-recorded admissions to things.

As Plaintiffs admit, online commentators and streamers are continuously engaging with third-party comments and statements while streaming, often on the video themselves, which lends itself to a didactic commentary environment. Pl. Am. Compl. (Dkt. 25) at ¶ 32 (citing alleged comments from third parties displayed during a livestream as part of the context of a statement). Thus, Plaintiffs need to specify whether they are complaining about something that *Hoyt* said or whether the real complaint is about something in writing from a third party. Plaintiffs declined to plead enough actual reference to statements in some places to identify which actual statements are allegedly defamatory so that Hoyt might do the same and put things into their actual context—a context intentionally absent from Plaintiffs' complaint.

For instance, Plaintiffs complain about a statement regarding Mizkif and "jail[.]" Pl. Am. Compl. (Dkt. 1) at ¶ 26 ("[Mizkif] should be in jail[.]"). Plaintiffs failed to give any further specificity even in the Amended Complaint. Hoyt can identify only one statement he made about jail. The comment was made during a video commentary about Mizkif's own admissions—after playing videos of Mizkif's own admissions for Hoyt's audience to see. A third-party member of his audience then asked Hoyt whether he had any opinion as to whether Mizkif "[was] done" because of his own admissions and behavior. Hoyt offered an opinion and speculation in response:

> I honestly, I think that he should just take a break. He should just try to like legitimately, like, just stop. I think that he, he will continue spiraling, and I think it might have already reached this point . . . but I think that it will reach the point where he ends up doing something that ends him up in jail, straight up. . . . I really do think that he should just take a break. And calm down.

Nothing about that statement is defamatory. It does not even go so far as to

advocate that Mizkif should be in jail, despite Mizkif's own admitted history of violence and drug use.

Instead, it is yet one more example of why these allegations should be dismissed and will fail on their face if presented as they appeared originally.

Moreover, the Texas Supreme Court has *already* ruled that those types of statements are not actionable as defamation, even if, theoretically, it could have ever been capable of a defamatory meaning—even if other statements were defamatory, and even if saying that someone "oughta be in jail." *Bentley v. Bunton*, 94 S.W.3d 561, 569, 581 (Tex. 2002) (holding that uttering that someone *should* be in jail was itself not defamatory, despite other defamatory content). The Court found that even that stronger statement is not actionable as defamation, even though it found that other statements accusing someone of bribery and/or corruption were, in fact, actionable. *Id.* In fact, the Court even allowed that referring to someone as a criminal once, alone, would not have been enough to find the defendant liable for defamation. *Id.*

## II.  Plaintiffs fail to sufficiently allege facts to state a cause of action for defamation under Texas law due to unclear allegations.

First, Plaintiffs decline in some places to give the medium regarding the various things complained about, to the extent they are outside of the single video mentioned by Plaintiffs. *See* Dkt. 25 at ¶¶ 26 (no reference given at all), 29 (alleging that something happened "daily" with no further reference(s) given). As a result, Defendant Hoyt does not always know whether Plaintiffs are complaining of libel or slander. Plaintiffs now mention only one video with regard to Defendant Hoyt, leaving one to wonder what the other allegations are about, if any exist, other than their interpretations of what is in that single video.

Second, Plaintiffs attempt to mix and match the claims: are Plaintiffs attempting to stick Hoyt with statements made by Emiru? We do not know, and

that is particularly challenging here, where Plaintiffs' allegations against Hoyt relate, at least in part, to statements that may be about Emiru's relationship with Mizkif. Plaintiffs muddy the waters regarding allegations by two separate plaintiffs against two separate defendants without delineating which statements were made by or about whom that are subject to the Count as to each Defendant by each Plaintiff. These things matter, as they implicate things such as the fair-reporting privilege, particularly as to Hoyt, a third-party commentator. Plaintiffs' Amended Complaint adds no clarity to this issue, still declining to specify exactly what the alleged claim is based upon.

## III. Plaintiffs appear to base the defamation claim upon things more than one year after the initial publication of the allegedly defamatory statement.

Some, if not all, of Plaintiffs' claims may be time-barred. Texas law adopts the one publication rule such that old statements about Mizkif's violent incidents in the past are time-barred altogether:

> Texas has adopted a one-year statute of limitations for libel claims. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a). The one-year limitations period begins to run when publication of the libelous statement is complete, which is "the last day of the mass distribution of copies of the printed matter." *Holloway v. Butler,* 662 S.W.2d 688, 692 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). "On that date, the publisher of the statement has made the libelous matter available to his intended audience and the tort is complete." *Stephan v. Baylor Med. Ctr. at Garland,* 20 S.W.3d 880, 889 (Tex. App.—Dallas 2000, no pet.). Because the period begins to run on the date the publication is complete, this rule is commonly referred to as the "single publication rule." *See id.*; *see also Williamson v. New Times, Inc.,* 980 S.W.2d 706, 710 (Tex. App.—Fort Worth 1998, no pet.).

*Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 142 (5th Cir. 2007); *Hamad v. Ctr. for the Study of Popular Culture*, No. A-06-CA-285-SS (W.D. Tex. Jun. 26, 2006) (adopting single publication rule for Internet publications).The

Fifth Circuit explained that Texas law follows this rule "to prevent plaintiffs from bringing stale and repetitive defamation claims against publishers." *Id.*

Here, Plaintiffs may be complaining about the same past incidents that are years behind Mizkif now, such as his assault on Mr. Jones, which is captured on video, excerpts of which have been published around the world, complete with later photos of injuries and a hospital visit, and which had already been discussed broadly. Video by David Jones from his livestream, SS7, *MIZKIF BEATS MITCH JONES FIST FIGHT*, YouTube (Feb. 6, 2024), https://www.youtube.com/watch?v=qHc5o9c0PmA&t=15s (at 00:15). Of course, it is difficult to know for certain which statements may be time-barred as the basis for a defamation claim, because Plaintiffs have failed to adequately identify and provide the publication for whatever statements they claim are defamatory.

## IV. Plaintiff Mizkif admits in his own words to the very things he complains about, so the statements are incapable of being defamatory.

For one thing, Plaintiffs can allege no actual damages here arising from Defendant Hoyt's statements, because any damage, if such exists, was already caused by Mizkif's own statements. Plaintiffs, however, must show that a false statement of fact proximately caused damages. *Mem. Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex. 2022) (holding same). Mizkif widely published his own admissions and statements—which all happened prior to Defendant Hoyt speaking—and many of them can even be seen in the video Mizkif has sued over, since it was playing these same statements back before any commentary by Hoyt. In Mizkif's video, he admits to violence, steroid-induced rage, lashing out, hurting people, and so on, and even had another commentator saying that his throwing things at his romantic partner was "more than likely malicious." *See infra at note 5.* Yet that is exactly what he now says he is suing about: his claims simply fail on

all allegations he had *already* admitted in his own widely-publicized video.

## V. Plaintiffs fail to allege facts sufficient to show actual malice or falsity.

Texas law requires Plaintiffs to show actual malice. "A public figure already bears the substantial burden of proving actual malice by clear and convincing evidence." *Turner*, 38 S.W.3d at 116.[16] "To establish actual malice, a public figure must prove that the defendant made the statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.' In this context, 'reckless disregard' means that the defendant 'entertained serious doubts as to the truth of his publication.'" *Turner*, 38 S.W.3d at 120 (citation omitted).

Plaintiffs omit their sources, but the only statement that may be a target is a commentary by Hoyt, including Mizkif's own admissions to the very things that Plaintiffs now sue about.[17] This renders any attempt by Plaintiffs to characterize Hoyt's commentary as defamation futile. Mizkif cannot fault someone for relying upon *his own words* in admitting that he is violent, uses drugs, is angry, aggressive, attempted to have sex with Emiru, and punches walls. Mizkif may not like his own words now, but he cannot sue Hoyt for reporting about them.

Plaintiffs must also show falsity. *Bentley*, 94 S.W.3d at 580 (noting that the U.S. Supreme Court required that "'a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved' and 'where public-official or public-figure plaintiffs are involved'") (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20, 20 at n.20 (1990)).

---

[16] Mizkif acknowledges both he and Hoyt are public figures with millions of followers. Pl. Am. Compl. (Dkt. 25) at ¶¶ 11–14, 27, 29, 42.

[17] Plaintiffs' First Amended Complaint makes it clearer that this one video appears to be the primary if not only thing they complain about, despite one vague allusion elsewhere to things said "daily" about "truth." Pl. Am. Compl. at ¶ 25. In particular, they now cite repeatedly to the same video in timestamps throughout the discussion of Defendant Hoyt, as seen in paragraph 27 at note 26, and continuing through at least note 47.

For instance, the Texas Supreme Court found that even the phrase "y'all are the ones that oughta be in jail" would not have "led a reasonable person to think that [a defendant] was asserting that [the plaintiff] had actually committed a crime" on its own, citing a litany of examples that go beyond the allegations in the complaint. *Bentley*, 94 S.W.3d at 582 n.50. That example goes well beyond anything Plaintiffs allege in this complaint.[18]

Here, Plaintiffs obviously run into problems because Mizkif has already himself admitted to most if not all of what he complains about, were one to see the sources for the Amended Complaint. Mizkif does not appear to be conceding that his own words—and the implications from them—were false. In fact, he goes out of his way to avoid mentioning what *he* said. Nor could Defendant Hoyt be liable for listening to, agreeing with, or expressing opinions about Mizkif's words. It does not appear that Plaintiff can show falsity with regard to the things he is complaining about.

## **CONCLUSION**

Plaintiffs' claim for defamation against Zack Hoyt fails to identify complete allegedly defamatory statement(s) in context. In fact, the Plaintiffs fail to provide the publication itself or the sentence it was yanked from. Instead, Plaintiffs primarily offer Mizkif being upset at his own characterizations of things—leaving the Court and Hoyt to guess. Plaintiffs therefore fail to state a claim that entitles Plaintiffs to relief. Plaintiffs do not even include any allegations related to the corporate plaintiff entity or any pertinent statements related to it at all.

---

[18] A statement in that case was ultimately found capable of a defamatory meaning for another reason, which was because of an allegation of taking bribes/public corruption, despite the litany of lurid accusations that have been found by courts to be non-defamatory as listed by the Court in footnote 50 of its opinion in *Bentley*. *Bentley*, 94 S.W.3d at 582 n.50, 583–84 (noting that Defendant had invited Bentley on his show to disprove facts about corruption and concluding that Defendant had seemed to mean the word corrupt as a fact assertion).

In sum, Plaintiffs filed a federal lawsuit without providing the publication and/or statements for the court and Defendant Hoyt to analyze. The defamation claim against Hoyt should be dismissed pursuant to Rule 12(b)(6) on all these bases. Therefore, Defendant Hoyt respectfully prays that this Court:

1.  Grant Hoyt's motion to dismiss;

2.  Dismiss Plaintiffs' lawsuit as to Hoyt with prejudice;

3.  In the alternative, order Plaintiffs to replead; and

4.  Grant to Hoyt all other relief it deems just and proper under these circumstances.

DATED: February 5, 2026                Respectfully submitted,

Austin R. Nimocks
Texas Bar No. 24002695
austin@pntlawfirm.com

Christopher L. Peele
Texas Bar No. 24013308
chris@pntlawfirm.com

*/s/Cleve W. Doty*
Cleve W. Doty
Texas Bar No. 24069627
cleve@pntlawfirm.com

**PNT Law Firm**
206 Wild Basin Rd. S.
Bldg. A, Ste. 206
Austin, TX 78746
Phone: (512) 522-4893
Fax: (512) 522-4893

**COUNSEL FOR DEFENDANT,
ZACK HOYT**

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on February 5, 2026, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

Aaron J. Burke
Burke Bogdanowicz PLLC
1201 Elm St., Ste. 4000
Dallas, TX 75270
(512) 507-4097
aaron@burkebog.com

*Counsel for Plaintiffs*

J. Collin Spring
Burke Bogdanowicz PLLC
1201 Elm St., Ste. 4000
Dallas, TX 75270
(512) 507-4097
jspring@burkebog.com

*Counsel for Plaintiffs*

Alexia P. Nicoloulias
Burke Bogdanowicz PLLC
1201 Elm St., Ste. 4000
Dallas, TX 75270
(512) 507-4097
anicoloulias@burkebog.com

*Counsel for Plaintiffs*

J. Hunter Ralston
Burke Bogdanowicz PLLC
1201 Elm Street, Suite 4000
Dallas, Texas 75270
(512) 507-4097
hralston@burkebog.com

*Counsel for Plaintiffs*

Jennifer S. Freel
Jackson Walker
100 Congress Ave., Ste. 1100
Austin, TX 78701
(512) 739-8414
(512) 236-2002 (fax)
jfreel@jw.com

*Counsel for Defendants, OTK Media, Inc. d/b/a One True King, Mythic Talent Management Inc., and King Gaming Labs, Inc.*

Steven L. Eychner
Newman & Lickstein, LLP
109 S. Warren St., Suite 404
Syracuse NY 13202
(315) 422-1172
seychner@newmanlickstein.com

*Counsel for Defendants, OTK Media, Inc. d/b/a One True King, Mythic Talent Management Inc., and King Gaming Labs, Inc.*

Dean J. DiPilato
Newman & Lickstein, LLP
109 S. Warren St., Suite 404
Syracuse NY 13202
(813) 909-3538
ddipilato@newmanlickstein.com

*Counsel for Defendants, OTK Media, Inc. d/b/a One True King, Mythic Talent Management Inc., and King Gaming Labs, Inc.*

Wesley Lome Gerrie
Newman & Lickstein, LLP
109 S. Warren St., Suite 404
Syracuse NY 13202
(315) 422-1172
wgerrie@newmanlickstein.com

*Counsel for Defendants, OTK Media, Inc. d/b/a One True King, Mythic Talent Management Inc., and King Gaming Labs, Inc.*

I further certify that a copy of the foregoing document(s) was e-mailed to the person(s) listed below:

Jessica Rankin Corpuz
weintraub | tobin
10250 Constellation Blvd., Ste. 2900
Los Angeles, CA 90067
(310) 860-3327
jcorpuz@weintraub.com

*Counsel for Defendant, Emily Beth Schunk*

/s/Cleve W. Doty
Cleve W. Doty