# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF TEXAS

# AUSTIN DIVISION

|  |  |
|---|---|
| MATTHEW MISRENDINO a/k/a MATTHEW RINAUDO and MIZKIF ENTERPRISES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EMILY BETH SCHUNK, ZACK HOYT, OTK MEDIA, INC. d/b/a ONE TRUE KING, MYTHIC TALENT MANAGEMENT INC. and KING GAMING LABS, INC., <br><br> Defendants. | Case No. 1:25-cv-01773-RP |

## DEFENDANT EMILY BETH SCHUNK'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

Defendant Schunk[1] hereby submits this Reply in support of her Motion to Dismiss (Dkt. No. 39). Misrendino's incomplete Opposition (Dkt. No. 46) haphazardly addresses only one of the arguments raised by Schunk in her Motion to Dismiss. Instead of engaging on the substantive legal issues, Misrendino has spent his energy viciously attacking Schunk in nearly daily livestreams, insulting both Schunk and this Court. It is clear that this lawsuit is simply a means to harass Schunk and drive viewership for his online platforms rather than a serious claim of defamation. The Court should dismiss the First Amended Complaint as to Schunk and put an end to his charade.

## I.      The First Amended Complaint Must be Dismissed as to Mizkif Enterprises

Count Two of the Amended Complaint contains absolutely no substantive allegations as to claims by Mizkif Enterprises against Schunk. In fact, the Motion to Dismiss questioned whether Plaintiffs even intended to include Mizkif Enterprises in Count Two, citing a possible copy-paste error. *See* Motion to Dismiss (Dkt. No. 39) at pp. 20-22.

In the Opposition, Plaintiffs admit: "the defamation claims are personal to [Misrendino] and are not brought on behalf of Mizkif Enterprises LLC." Opposition (Dkt. No. 46) at p. 1, FN. 1.[2] Based on Plaintiffs' own admission that Count Two was never intended to include claims by Mizkif Enterprises, the Court must grant Schunk's Motion to Dismiss as to Mizkif Enterprises and dismiss all claims by Mizkif Enterprises against Schunk, without leave to amend.

## II.      Misrendino's Opposition Does Not Dispute Most of Schunk's Arguments

The Opposition, which is less than eight pages long despite the twenty-page limit prescribed by Local Rule CV-7(D)(3), does not even attempt to address many of the arguments raised by

---

[1] All capitalized and defined herein have the same meaning as set forth in the Motion to Dismiss the First Amended Complaint, filed on March 3, 2026 (Dkt. No. 39) ("Motion to Dismiss").

[2] Confusingly, despite this clear admission, the Opposition was filed by "Plaintiffs" (not Misrendino individually) and includes a prayer for relief on p. 8 that the Court grant "Plaintiffs… such other and further relief as to which they may be entitled at law or in equity." This is exactly the issue raised by Schunk in her Motion to Dismiss. The First Amended Complaint is sloppy and careless, as is the Opposition. Count Two alleges that "Plaintiffs" were harmed by Schunk and the Opposition states that "Plaintiffs" seek relief from Schunk, yet the Opposition admits that there are no valid claims by one of those two Plaintiffs. Schunk cannot even tell which party is suing her, let alone how those parties were supposedly harmed by her actions.

#5156028v1

Schunk in her Motion to Dismiss.  By refusing to dispute or rebut Schunk's arguments, Misrendino admits by omission that Schunk is correct and the First Amended Complaint must be dismissed.

### A.    Misrendino Admits the First Amended Complaint Lacks Sufficient Context

Schunk argued that the First Amended Complaint fails to state a facially plausible claim for relief because Misrendino alleges no more than "labels and conclusions" without articulating the context of the statements at issue, how they were supposedly false, or how they were capable of a defamatory meaning.  *See* Motion to Dismiss (Dkt. No. 39) at pp. 10-11.  In the Opposition, Misrendino does not even respond to Schunk's argument on this point.  Having waived the issue entirely, the Court should dismiss the First Amended Complaint on this basis alone.

As set forth in detail in the Motion to Dismiss, a Court must examine the full context of an allegedly defamatory statement "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it."  *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017).  The "gist" of the statement is required to determine whether it is capable of a "defamatory meaning."  *Ibid.*  The Court must evaluate "the entirety of a publication and not merely on individual statements." *In re Lipsky*, 460 S.W.3d 579, 594 (Tex. 2015).

The First Amended Complaint completely fails to present the context of the statements made by Schunk that are supposedly defamatory to Misrendino.  Misrendino never explains his failure to include the entire text of her ninety-minute livestream in the First Amended Complaint – he does not even attach it to his Opposition.

The livestream was not merely limited to the handful of sentences set forth in Paragraphs 19 and 20 of the First Amended Complaint.  It was ninety minutes of soul-bearing, emotional, and deeply personal remarks regarding the nature of the parties' personal relationship.  Further, Misrendino's own livestream in response to Schunk provides critical context to her statements, primarily by validating many of Schunk's claims against him.  By failing to provide the Court with the two livestreams, the Court is denied the opportunity to evaluate the "gist" of the statements. Misrendino simply does not allege sufficient facts to state a claim of defamation.

#5156028v1

**B.**     **Misrendino Concedes That Paragraph 20 Fails to State a Claim for Defamation**

Misrendino does not even attempt to explain the bizarre and nonsensical phrases identified as defamatory in the First Amended Complaint (for example, that Misrendino "was 'screaming' at her due to her cat" at Paragraph 20(n)).  He does not devote a single word of his Opposition to defending against Schunk's arguments on this point.  Specifically, Misrendino concedes by omission that the statements set forth in Paragraphs 20(n), 20(q), and 20(s) are not capable of a defamatory meaning, as set forth in the Motion to Dismiss at pp. 12-13.

Similarly, Misrendino does not even address Schunk's arguments that he actively misrepresented the content of her livestream (for example, conveniently neglecting that Schunk stated that certain information was actually reported to her by others).  He does not dispute that he intentionally omitted critical portions of the statements alleged at Paragraphs 20(a), 20(d), 20(g) and 20(t), as set forth in the Motion to Dismiss at pp. 13-14.

Because Misrendino does not dispute that these twisted quotes are misrepresented and incapable of a defamatory meaning, Misrendino admits that the First Amended Complaint should be dismissed as to at least Paragraphs 20(a), 20(d), 20(g), 20(n), 20(q), 20(s), and 20(t).

**C.**     **Misrendino Admits that Schunk's Statements Were True**

Most notably, the Opposition completely fails to address the substantial evidence validating Schunk's statements as true, based solely on the content of her livestream and Misrendino's responsive livestream.  Defamation requires that the plaintiff plausibly plead that the statement in question was false.  *See Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023).  A statement is "substantially true if it is no more damaging to the plaintiff's reputation than a truthful statement would have been." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 640 (Tex. 2018).  A statement that is "literally and substantially true" is not defamatory.  *Ibid*.

By not even attempting to rebut Schunk's arguments on this point, Misrendino admits that he has failed to state a claim for defamation because Schunk's statements are unquestionably true.

In the Motion to Dismiss at pp. 14-15, Schunk explains that she provided screenshots in her livestream validating her statements at Paragraph 20(i) regarding an incident in which Misrendino

4

#5156028v1

became angry and aggressive because Schunk's simultaneous livestream was more popular than his. Schunk provided the Court with the full context of her statement, and even provided the Court with a copy of the screenshots which were displayed during her livestream showing Misrendino's abusive statements to Schunk.  *See* Declaration of Emily Beth Schunk ("Schunk Declaration") (Dkt. No. 39-1), Ex. 1 (livestream), Ex. 2 (transcript) at approx. 20:20; 52:37; 1:00:42; 1:02:22, and Ex. 3 (screenshots).  Misrendino's Opposition does not even attempt to explain why her statements are supposedly defamatory despite her inclusion of actual evidence supporting her claims.

Similarly, Schunk explained in the Motion to Dismiss that Misrendino's livestream validated her portrayal of their relationship.  Misrendino himself admits that, among other threatening and harassing behavior, he "punched holes in the walls or slammed doors in aggression," Schunk Declaration, (Dkt. No. 39-1), Ex. 4 (livestream) and 5 (transcript) at approx. 13:36.  Yet in the First Amended Complaint he claims that she defamed him when she stated that a "slammed door broke" (¶ 20(i)), that he would "destroy furniture, throw things, destroy walls, banging on the door, and screaming at her" (¶ 20(j)), that he would "scream at her while she was asleep" (¶ 20(l)), and that he was "physically aggressive" (¶ 20(m)).  As set forth in the Motion to Dismiss at pp. 13-14, Schunk's statements regarding Misrendino's threatening and abusive behavior were plainly true, as evidenced by his own words.  Misrendino never articulates in the First Amended Complaint or in the Opposition how Schunk's statements are false, a plain requirement of a defamation claim.

Misrendino also admits that he threw objects at Schunk and that she "got a bruise from it," (Schunk Declaration (Dkt. No. 39-1), Ex. 4 (livestream) and 5 (transcript) at approx. 4:07), yet claims she defamed him by saying that she got a black eye from objects being thrown at her (Paragraph 20(f)).  This statement is also plainly true and therefore does not meet the requirements of a claim of defamation.  *See* Motion to Dismiss (Dkt. No. 39) at p. 16.

Similarly, Misrendino also admitted in his livestream that he was going to "expose" Schunk, go "fucking buck wild," and threatened that "if she goes after me, then I will go nuclear."  Schunk Declaration (Dkt. No. 39-1), Ex. 4 (livestream) and 5 (transcript) at approx. 18:59, 20:32.  Yet in the First Amended Complaint at Paragraphs 20(b) and 20(c), he claims that Schunk defamed him

by stating that he was engaging in a "smear campaign" and would "destroy her if she spoke out about him."  Misrendino also admitted that he "drive[s] fast all the time" yet couldn't remember the speed at which they were "flying" in the car.  Schunk Declaration (Dkt. No 391-), Ex. 4 (livestream) and 5 (transcript) at approx. 22:05.  Yet, at Paragraph 20(k) he claims it was defamatory for her to state that he was driving "like 150 miles an hour."  These statements were true by Misrendino's own admission and are not sufficient to state a claim for defamation.  *See* Motion to Dismiss (Dkt. No. 39) at pp. 15-16.

Most egregiously, Misrendino described himself as "controlling" and "extremely fucking toxic," yet sued Schunk for defamation because she described him as "controlling" at Paragraphs 20(e), 20(h), and 20(o) and said she received nothing but "abuse and resentment" from him at Paragraph 20(r).  *See* Schunk Declaration (Dkt. No. 39-1), Ex. 4 (livestream) and 5 (transcript) at approx. 12:42.  Misrendino literally admitted that the exact words Schunk used were correct, and then sued her for defamation for using them.  *See* Motion to Dismiss (Dkt. No. 39) at p. 16.

Frankly, this case is an abuse of the legal system.  Misrendino doesn't even try to dispute the underlying truth of Schunk's statements.  Misrendino has admitted *twice* – once in his livestream and now again in his Opposition by doing nothing to contest Schunk's arguments – that Schunk's statements were true.  Misrendino's own admissions defeat his claims entirely.  Misrendino has plainly failed to state a claim for defamation as to the statements contained at Paragraphs 20(b), 20(c), 20(e), 20(f), 20(h), 20(i), 20(j), 20(k), 20(l), 20(m), 20(o), and 20(r).

### III.    Misrendino's Opposition Completely Misrepresents the Holding in *Benson* Case, as Well as Schunk's Arguments in the Motion to Dismiss

In the Opposition, Misrendino is solely focused on Schunk's statements that Misrendino sexually assaulted her – his focus is so narrowed that he effectively drops every other allegation in the First Amended Complaint.  The sole legal argument made by Misrendino is whether Schunk's statements that Misrendino sexually assaulted her are actionable under the standard set forth in *Benson v. Guerrero*, 702 S.W.3d 775 (Tex. App. 2024).  In making this argument, Misrendino completely misrepresents Schunk's argument and the holding of the *Benson* case.

#5156028v1

In *Benson*, the daughter described "how she came to be estranged from [her mother] and how she felt about it… and expressed her sadness about being estranged from her family. Her recollections about her conversations with [her mother] and how they led to [the daughter]'s feelings of abandonment were no more than 'opinions masquerading as fact.'" *Benson* at 789. The Court examined the entirety of the daughter's statement and held that the daughter's words contained "her personal viewpoint, i.e., her own 'emotional truth,' and not purported fact." *Ibid*. "A statement is an opinion if it is 'by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder or is otherwise a loose and figurative term.'" *Benson* at 788.

The court in *Benson* also described at length the holding of *Dallas Morning News*, 554 S.W.3d 614. There, the Texas Supreme Court held that a newspaper column lamenting the "societal secrecy surrounding suicide" did not constitute defamation by criticizing a family for withholding details of the deceased's suicide in an obituary. "[S]tatements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions. Whether a statement is an opinion is a question of law." *Dallas Morning News* at 639. The court held that the column "used language that convey[ed] a personal viewpoint rather than an objective recitation of fact," used "a first-person, informal style," which "indicate[d] that the format [wa]s subjective rather than objective," and used words that indicated "that the statement [wa]s an opinion." *Ibid*.

The *Benson* court relied on *Dallas Morning News* in finding that the daughter's statements similarly conveyed her personal viewpoint in her description of the family rift, and therefore constituted non-actionable opinions. Both courts emphasized that the "entire context in which a statement was made must be analyzed to determine whether a verifiable statement of fact is nonetheless an opinion for purposes of defamation." *Dallas Morning News* at 639-640.

This is exactly what occurred here. Just like the daughter in *Benson* and the newspaper columnist in *Dallas Morning News*, Schunk used a "first-person, informal style" and repeatedly made clear that she was "saying her piece" and "giving her personal viewpoint" about Misrendino's toxic and controlling actions (in his own words) during their relationship and after their relationship ended. She describes in depth the emotional turmoil the relationship caused her, and the

7

repercussions for her career and current emotional state.  Any reasonable viewer would understand that she was telling her experience as she lived it (as the court in *Benson* described it, her "emotional truth").  Schunk's entire livestream cannot form the basis of a claim for defamation.  As the courts held in *Benson* and *Dallas Morning News*, Schunk's description of her relationship with Misrendino are simply not actionable on a claim of defamation.

Misrendino, again focusing solely on the term "sexual assault," next argues that the portion of *Benson* addressing the step-father's claims against the daughter somehow support his arguments.  Notably, Misrendino selectively quotes *Benson* and ignores its holding as to the step-father's claims in order to try to shoe-horn it into his narrative.

In *Benson*, the step-father's defamation claim was based solely on the fact that the daughter stated that he "sexually assaulted her" without providing any further explanation.  "Because the Texas Penal Code defines a criminal offense as 'sexual assault' and [the daughter] published a statement that [the step-father] had 'sexually assaulted' her, without further explanation, the words [the daughter] used were reasonably capable of a defamatory meaning, i.e., that [the step-father] had committed the criminal offense of sexual assault against her."  *Benson* at 786.  Although the daughter later submitted a sworn declaration stating the details of the assault, the step-father also submitted a declaration that he did not "force his hands between [the daughter]'s thighs or grabbed [her] with his hand on her sexual organ."  *See Benson* at 786-787.  The step-father's sworn denial was enough for the court to find that he had stated a claim for defamation.

In the Opposition and in multiple public statements regarding this case, Misrendino argues that Schunk's discussion of the *Benson* case in the Motion to Dismiss was an attempt to soften or backtrack from her statement that Misrendino sexually assaulted her.  To be absolutely clear, Schunk is not softening her statement or backtracking in any way.  She told the truth during her livestream that Misrendino sexually assaulted her, and Misrendino's attempt to bully her in a court of law and in the court of public opinion will not silence her.  In fact, Schunk specifically described Misrendino's assault:

#5156028v1

> [S]o yeah, we were just talking and I was crying a lot. He started to try to comfort me by hugging me while I was sitting on the couch and holding me really close to him. And when this was happening, we hadn't talked in quite a while. And I'm usually very uncomfortable with being touched a lot by people that I'm not in a relationship with. But I let him hold me while I was crying and he started kissing me in my face and I let him do it. I was still sobbing a lot. **And then um suddenly he tried to climb on top of me and aggressively shoved his hand down my pants and um I screamed. […] And when I screamed, he jumped off me like a cat like. And instead of apologizing or checking if I was okay, he said, "I feel weird now. I feel like I did something wrong. I have to go."** And he immediately left my house while I was still crying without checking if I was okay or anything.

Schunk Declaration (Dkt. No. 39-1), Ex. 1 (video) and 2 (transcript) at approx. 49:30 (emphasis added).  In his responsive livestream, Misrendino largely agrees with the bulk of Schunk's account:

> We cuddled for about 30 minutes and started to kiss. She said that she was okay with this on her stream and **I started to advance to the next stage because I thought that's what she wanted. She yelped and I immediately sprung up and was scared if I did anything wrong or did wrong in general. I got scared and left the house.** I apologize if that made Emi uncomfortable for me not saying sorry and I wish I said sorry back then, but we got back together soon afterwards.[3]

Schunk Declaration (Dkt. No. 39-1), Ex. 4 (livestream) and 5 (transcript) at approx. 15:17 (emphasis added).

Misrendino admits that he "shoved his hand down [her] pants," describing it euphemistically as "advance[ing] to the next stage" of sexual activity in an attempt to paint himself in a better light. He admits that she screamed when he touched her and that he felt like he "did something wrong" afterward.  He even describes his guilt after he left Schunk's house.

This is completely different from the situation in *Benson*, where the step-father strenuously denied that any sexual activity occurred.  Here, Misrendino admits to the underlying activity, but bitterly complains that Schunk used the term "sexual assault" to describe his conduct.  Misrendino doesn't dispute Schunk's version of events.  Rather, his only defense is that there was a thirty-minute gap between when Schunk used the term "sexual assault" and when she described the

---

[3] For clarity, Schunk and Misrendino did not "get back together" after the assault.  Sadly, this is a common tactic by abusers to try to justify their behavior towards their victims.

assault. He claims, without any evidence whatsoever, that in the "internet age" no viewer would wait to hear the full context of her statement. *See* Opposition (Dkt. No. 46) at pp. 6-7.

Unfortunately for Misrendino, that is exactly the legal standard on a claim of defamation. "[T]he meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the *entirety of a publication* and not merely on individual statements." *Lipsky*, 460 S.W.3d at 594 (emphasis added). The Court is required to review the entirety of Schunk's statement (which any reasonable person would do, "internet age" or not).

Once again, Misrendino hopes that the Court will review solely the cherry-picked words in the First Amended Complaint instead of the entire context of Schunk's statement. Once the Court reviews the entire context, it is clear that Misrendino cannot state a claim for defamation merely because he doesn't like Schunk's description of her experiences with him. Misrendino has not plausibly alleged an actionable statement of fact by Schunk sufficient to form a claim for defamation, and the First Amended Complaint must be dismissed.

## IV.    The First Amended Complaint Should be Dismissed Without Leave to Amend

As set forth above, the First Amended Complaint simply does not state a sufficient claim for defamation against Schunk. Further, the Opposition does not set forth any additional facts by which Misrendino could cure its deficiencies and state such a claim, nor any way that Misrendino could amend his allegations to more specifically identify his claims against Schunk. Therefore, the Court should dismiss the First Amended Complaint in its entirety as to Schunk, without leave to amend.

## V.    The Opposition Makes Clear That the Only Goal of This Lawsuit is to Drive Misrendino's Online Engagement

Misrendino's complete lack of fight on the key issues in Schunk's Motion raises a larger question about Misrendino's motives and goals in this litigation. Misrendino has been on a public relations campaign against Schunk for many months, but his public statements have significantly escalated since the filing of the Motion to Dismiss. He has engaged in nearly daily public livestreams regarding Schunk and this lawsuit. His comments have been offensive, harassing, and threatening. A small sampling of some of his most egregious statements are set forth below:

#5156028v1

- "Emi did this.  She lied under oath…. I'm telling you I cannot wait to see their fucking faces because they're going to see more and more shit --  as time goes on, I'm realiz[ing] that they're going to have no arguments."  Reply Declaration of Emily Beth Schunk in Support of Motion to Dismiss First Amended Complaint, filed concurrently herewith ("Schunk Reply Decl."), ¶ 2, Ex. 1 (livestream); ¶ 3, Ex. 2 (transcript) at approx. 0:00, 0:36.

- "[P]eople are fucking waking up to this reality that Emiru [Schunk] is a fucking liar, that she lied about so many things, and she's already lied under oath…. It just means her lawsuit is no substantial evidence."   Schunk Reply Decl., ¶ 2, Ex. 1 (livestream); ¶ 3, Ex. 2 (transcript) at approx. 1:28; 2:26.

- "Everyone wants her [Schunk] in prison.  She should be in prison.  And my opinion, what she did is straight up should be -- I don't know how it's not a felony, but it should be.  I-- I-- I think it's so disgusting that she's just able to walk."  Schunk Reply Decl., ¶ 4, Ex. 3 (livestream); ¶ 5, Ex. 4 (transcript) at approx. 1:33.

- "And she waits fucking 4 and a half months to stall this shit out so no one cares anymore.  And her fucking response [the Motion to Dismiss] is that, like, are you kidding me? And no one cares.  No one cares.  Like, no one wants to listen.  It's, it's so unfair."  Schunk Reply Decl., ¶ 6, Ex. 5 (livestream); ¶ 7, Ex. 6 (transcript) at approx. 1:17.

Misrendino's attempt to wage a public relations war against Schunk is horrific and, frankly, sanctionable.  Misrendino doesn't care if he wins this lawsuit, his only goal is to use the publicity driven by the lawsuit to create as much attention as possible for his livestreams.  While not typically evaluated at the Motion to Dismiss stage, the Court should take extra care to consider Misrendino's claims in the wider context of his public campaign to intimidate and silence Schunk through any means necessary, and dismiss the First Amended Complaint.

## VI.    Conclusion

For the foregoing reasons, the Court should dismiss the First Amended Complaint as to Schunk, in its entirety.

11

DATED:  March 24, 2026

Respectfully submitted,

*/s/ Jessica R. Corpuz*
Jessica R. Corpuz
Admitted *Pro Hac Vice*
California Bar No. 279237
jcorpuz@weintraub.com
Carly M. Moran
Admitted *Pro Hac Vice*
California Bar No. 333661
cmoran@weintraub.com
**WEINTRAUB TOBIN CHEDIAK
COLEMAN GRODIN LAW
CORPORATION**
10250 Constellation Boulevard, Suite 2900
Los Angeles, California 90067
Telephone: (310) 858-7888
Facsimile: (310) 550-7191


Daniel H. Byrne
Texas Bar No. 03565600
dbyrne@fritzbyrne.law
**FRITZ BYRNE, PLLC**
402 West Seventh Street,
Austin, TX 78701
Telephone: (512) 476-2020

**ATTORNEYS FOR DEFENDANT
EMILY BETH SCHUNK**

12

#5156028v1

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was electronically submitted to the Clerk of Court for the U.S. District Court, Western District of Texas, using the CM/ECF system. A true and correct copy of the foregoing document was served upon all counsel record via the Court's electronic filing service in accordance with the Federal Rules of Civil Procedure on March 24, 2026.

*/s/ Jessica R. Corpuz*
Jessica R. Corpuz

#5156028v1