**FILED**

June 15, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Christian Rodriguez_____
                                                    DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| Matthew Misrendino a/k/a Matthew Rinaudo and Mizkif Enterprises LLC, <br> *Plaintiffs* | § <br> § <br> § | |
| **v.** | § <br> § | **No. 1:25-cv-01773-RP** |
| Emily Beth Schunk; Zack Hoyt; OTK Media Inc.; Mythic Talent Management, Inc.; and King Gaming Labs, Inc., <br> *Defendants* | § <br> § <br> § <br> § | |

<u>**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**</u>

**TO:    THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants OTK Media Inc., Mythic Talent Management, Inc., and King Gaming Labs, Inc.'s Opposed Motion to Compel Arbitration and Stay Litigation, filed December 23, 2025 (Dkt. 17); Defendant Zack Hoyt's Amended Motion to Dismiss, filed February 5, 2026 (Dkt. 32); Defendant Emily Beth Schunk's Motion to Dismiss First Amended Complaint, filed March 3, 2026 (Dkt. 39); and the response and reply briefs.[1]

### I.    Background

Plaintiffs Matthew Misrendino and his limited liability company Mizkif Enterprises LLC bring this defamation and breach of contract suit against Defendants Emily Beth Schunk; Zack Hoyt; OTK Media Inc. ("OTK"); Mythic Talent Management, Inc. ("Mythic"); and King Gaming Labs, Inc. ("King").

---

[1] By Text Orders entered April 28, 2026, the District Court referred the motions to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

Plaintiffs invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332. The Court is satisfied that the parties were completely diverse when this lawsuit was filed based on the allegations in Plaintiffs' First Amended Complaint (Dkt. 25 ¶¶ 1-7) and their Supplemental Briefing on Domicile (Dkt. 54), filed by Order of the Court.

## A.  Alleged Facts

Plaintiffs allege the following in their First Amended Complaint (Dkt. 25):

Misrendino is a popular creator and livestreamer on YouTube and Twitch "known for collaborating with other streamers, playing video games, and discussing various issues with his followers and subscribers." *Id.* ¶ 12. In 2020, Misrendino and Hoyt founded the "One True King" media brand and incorporated OTK, and Misrendino remains a part owner. *Id.* ¶ 14. Schunk "joined the OTK ownership in 2022." *Id.*  Misrendino began dating Schunk the same year, and they had a "tumultuous" romantic relationship until he ended it in January 2025 and moved to Los Angeles, California. *Id.* ¶ 17.

On October 25, 2025, Schunk hosted a livestream on Twitch during which she made "slanderous accusations" against Misrendino, accusing him of "psychological and domestic abuse, stalking and harassment, sexual assault, and threats of blackmail." *Id.* ¶ 18. Since Schunk's Livestream, Hoyt has continuously defamed Misrendino by making similar allegations against him. *Id.* ¶ 26. Both made their untrue, defamatory statements with actual malice, knowing they were false. *Id.* ¶ 43.

Immediately after Schunk's livestream, OTK sent Misrendino a letter terminating his interest in OTK and falsely asserted that Misrendino had breached the ownership agreements with OTK and King. *Id.* ¶ 21-22 & Exhibit A, Dkt. 25-1. OTK also demanded repayment of certain management fees owed to Mythic. *Id.* ¶ 23 & Dkt. 25-1 at 2.

### B. Litigation

Plaintiffs sued on November 3, 2025. In their Amended Complaint, Plaintiffs assert three claims: (1) breach of contract against OTK and King based on the OTK Ownership Agreement and King's Agreements with Plaintiffs (Count One); (2) common law defamation against Schunk and Hoyt (Count Two); and (3) Declaratory Judgment against OTK, Mythic, and King that "OTK, Mythic, and King have no claims against Plaintiffs" and that "OTK and King's attempts to divest Plaintiffs of their ownership interests were ineffective as a matter of law" (Count Three). *Id.* ¶¶ 36-49. Plaintiffs also seek monetary damages and attorneys' fees.

Schunk and Hoyt move to dismiss Plaintiffs' defamation claims (Count Two) under Rule 12(b)(6) for failure to state a claim. Dkt. 32; Dkt. 39. Defendants OTK, Mythic, and King (together, "OMK") ask the Court to compel Plaintiffs to arbitrate their declaratory judgment claim against Mythic (Count Three) under Mythic and Plaintiffs' contract.[2] Dkt. 17.

### II.    Motion to Compel Arbitration

OMK asks the Court to compel Plaintiffs to arbitrate their declaratory judgment claim against Mythic under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. OMK also asks the Court to stay Plaintiffs' remaining claims against OTK and King (Counts One and Three) pending resolution of the arbitration because the arbitration "will address issues that may prove dispositive of Plaintiffs' claims against OTK and King." Dkt. 17 at 3.

Plaintiffs do not dispute, and so concede, that they entered into an agreement to arbitrate that covers their declaratory judgment claim. Plaintiffs argue only that their claims are not arbitrable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021

---

[2] Plaintiffs amended their Complaint after the Motion to Compel Arbitration was filed, but the moving Defendants ask the Court to decide the fully briefed motion because "[t]here is no discernable impact on the Motion to Compel from any new factual allegations in the Amended Complaint." Dkt. 31 at 2. The Court agrees and addresses the merits of the motion.

("EFAA").[3] They also contend that the Court should not stay their remaining claims in Counts One and Three because they are insufficiently intertwined with the claims against Mythic. Dkt. 23 at 8.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under § 4 of the FAA, a party may move to compel arbitration "when one party has failed, neglected, or refused to comply with an arbitration agreement." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The FAA establishes "a liberal federal policy favoring arbitration agreements." *Id.* (citation omitted). It "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Courts in the Fifth Circuit apply a two-step analysis to determine whether parties should be compelled to arbitrate a dispute. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). First, the Court applies state law to determine "whether the parties entered into *any arbitration agreement at all*." *Id.* The second step involves contract interpretation "to determine whether *this* claim is covered by the arbitration agreement." *Id.* The second step is a question for the court unless the arbitration agreement contains a delegation clause "giving the arbitrator the primary power to rule on the arbitrability of a specific claim." *Id.* The party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate and that the claims fall within the agreement. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *CMC CGM, S.A. v. GCC Supply & Trading L.L.C.*, 793 F. Supp. 3d 866, 876 (S.D. Tex. 2025).

---

[3] Plaintiffs also request oral argument. Finding oral argument unnecessary, the Court denies the request.

OMK argues that Plaintiffs entered into a valid arbitration agreement when Misrendino executed the Mythic Talent Management Representation ("Representation Agreement") on January 2, 2023. Dkt. 17 at 5. The Representation Agreement states:

> All disputes and controversies of every kind and nature whatsoever between Mythic and Client arising out of, or in connection with, Mythic's representation of Client (including without limitation commission disputes) shall be finally determined by binding arbitration conducted in accordance with the Streamlined Arbitration Rules and Procedures of JAMS.

Dkt. 17-2 at 30. Plaintiffs do not dispute, and the Court finds, that OMK has met its initial burden to compel arbitration. The burden thus shifts to Plaintiffs to show that the arbitration agreement is unenforceable.

Plaintiffs argue that the EFAA renders the arbitration agreement invalid and unenforceable. The EFAA provides:

> Notwithstanding any other provision of this title, ***at the election of the person alleging conduct*** constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a) (emphasis added).

Plaintiffs contend that the EFAA applies to their suit because it "involves an alleged sexual assault and this lawsuit relates to that dispute." Dkt. 18 at 4. But the plain text of § 402(a) confers the choice to arbitrate to the person "alleging conduct constituting a sexual harassment dispute." "To the extent Plaintiff argues that he may elect to invalidate the arbitration agreement because of the sexual harassment accusation against *him*, the Court disagrees." *Raupp v. Compass Grp. USA, Inc.*, No. 24-10565, 2024 WL 4948838, at *2 (E.D. Mich. Dec. 3, 2024). Because Schunk alleged sexual assault, Plaintiffs cannot invoke the EFAA to invalidate the arbitration clause. *Id.*

This Magistrate Judge finds that Plaintiffs' claim against Mythic must be arbitrated.

### III.  Request to Stay

When a district court finds that a lawsuit involves an arbitrable dispute and a party requests a stay pending arbitration, § 3 of the FAA "compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Accordingly, Plaintiffs' claim against Mythic must be stayed.

Plaintiffs did not enter into an arbitration agreement with OTK and King, but OMK argues that Plaintiffs' claims against OTK and King also should be stayed because they are "inextricably intertwined" with the claim against Mythic. Dkt. 17 at 4. A stay of claims against defendants who are not part of the arbitration agreement may be proper "when the action against the non-party is dependent upon interpretation of the underlying contract." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

Plaintiffs' claims against OTK and King in Counts One and Three arise in part from their assertion that Misrendino's breach of the Representation Agreement with Mythic constitutes a breach of his ownership agreements with OTK and King. Exhibit A to Plaintiffs' Amended Complaint, Dkt. 25-1. Because OTK and King terminated their agreements with Misrendino based in part on the Representation Agreement, this Magistrate Judge finds that Plaintiffs' claims against OTK and King depend on interpretation of that agreement and recommends that the Court stay Counts One and Three against OTK and King pending arbitration. *U.S. ex rel. Tindall Corp. v. Satterfield & Pontikes Const., Inc.*, No. SA-14-CV-33-XR, 2014 WL 819478, at *3 (W.D. Tex. Mar. 3, 2014).

### IV.  Motions to Dismiss Defamation Claims

Misrendino alleges that Schunk and Hoyt defamed him in violation of Texas common law by repeatedly publishing untrue statements about him to "an audience of millions, painting him as a rapist, domestic abuser, and emotional abuser." Dkt. 25 ¶ 42. Schunk and Hoyt each move to

6

dismiss, arguing that Plaintiffs do not state a plausible defamation claim under Texas law.[4] In the alternative, each defendant asks the Court to order Plaintiffs to file a more definite statement under Rule 12(e).

### A.  Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But "conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (citation omitted). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court reviews "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Schunk attaches a video and transcript of her allegedly defamatory livestream statements to her motion to dismiss. The Court has considered the video and transcript because they are central to and referenced by the First Amended Complaint. *Id.*

---

[4] While not apparent from the First Amended Complaint, Misrendino clarifies in response to each motion to dismiss that "the defamation claims are personal [ ] and are not brought on behalf of Mizkif Enterprises LLC." Dkt. 34 at 1 n.1; Dkt. 46 at 1 n.1.

## B. Defamation under Texas Law

Because this case is before the Court on diversity jurisdiction, Texas substantive law applies. *Jack v. Evonik Corp.*, 79 F.4th 547, 555 (5th Cir. 2023). To plausibly state a claim of defamation under Texas law, the plaintiff must allege "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement; and (4) damages (unless the statement constitutes defamation per se)." *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017).

In a defamation case, the threshold question is whether the words used "are reasonably capable of a defamatory meaning." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018) (quoting *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)). To answer that question, courts analyze the "gist" of the whole publication. *In re Lipsky*, 460 S.W.3d 579, 594 (Tex. 2015). The Texas Supreme Court explains:

> In answering this question, "the inquiry is objective, not subjective." But if the court determines the language is ambiguous, the jury should determine the statement's meaning. If a statement is not verifiable as false, it is not defamatory. Similarly, even when a statement *is* verifiable as false, it does not give rise to liability if the "entire context in which it was made" discloses that it is merely an opinion masquerading as a fact.

*Dallas Morning News*, 554 S.W.3d at 624 (citations omitted). "Accusing someone of a crime . . . or of engaging in serious sexual misconduct" is defamation per se. *Williams v. Rep. Serv.*, No. 4:25-CV-00422, 2025 WL 2393363, at *12 (S.D. Tex. July 23, 2025), *R. & R. adopted*, 2025 WL 2391767 (S.D. Tex. Aug. 18, 2025).

## C. Schunk's Motion to Dismiss

Schunk argues that Misrendino's allegations do not provide sufficient context for the Court to determine whether the gist of her statement was reasonably capable of a defamatory meaning. She

also argues that her statement, considered in its entirety, was an opinion or her protected "emotional truth." Dkt. 39 at 18.

Both parties cite *Benson v. Guerrero*, 702 S.W.3d 775 (Tex. App.—Houston [1st Dist.] 2024, no pet.), in which the defendant alleged in a TikTok video that her stepfather sexually assaulted her and her mother knew but did not care. *Id.* at 787-88. The stepfather and mother both sued for defamation. *Id.* The court found that the defendant's statement was defamatory per se as to the stepfather because she stated that he "'sexually assaulted' her, without further explanation," and the words used were reasonably capable of meaning that the stepfather committed the criminal offense of sexual assault against her. *Id.* at 786. As to the defendant's mother, the court held that the statements were mere opinions masquerading as fact because they gave defendant's "view of how the rift occurred." *Id.* at 789. The statement described the defendant's "emotional journey and expressed her sadness about being estranged from her family" in an informal, intimate setting. *Id.*

The Court finds that the "gist" of Schunk's 90-minute livestream statement recounts her allegedly abusive relationship with Misrendino; in her reply brief, she calls this "ninety minutes of soul-bearing, emotional, and deeply personal remarks regarding the nature of the parties' personal relationship." Dkt. 48 at 3. Schunk says near the beginning that she is "finally going to be opening up about the psychological and domestic abuse, stalking and harassment, sexual assault, and threats of blackmail that Mizkif[5] has done towards me and some of these issues which are still ongoing." Dkt. 39-3 at 7 [20:30]. Schunk says she is making the statement so others are aware of Misrendino's actions toward her and to prevent him from doing the same to others. *Id.* at 8 [21:51].

> But I felt like this was a necessary stream because like I said at the very beginning, I have heard that he has done things to other people that aligned with some of my own experiences. So, I felt like it would be wrong for me

---

[5] "Mizkif" is Misrendino's online "handle." Dkt. 25 ¶ 11.

> to keep holding on to all this information. . . . And um yeah, that's um that's my story of um dealing with abuse, um psychological and domestic abuse, um sexual assault, and um stalking and being threatened on if you know I ever talked about it.

*Id.* at 24-25 [1:20:22].

Considering the "gist" of Schunk's statement, which includes allegations of sexual assault, the Court finds that it was reasonably capable of a defamatory meaning. Accepting Misrendino's factual allegations as true and viewing them in the light most favorable to him, as required at this stage of the proceeding, the Court finds that he plausibly pleads a claim for defamation against Schunk based on her allegedly untrue statement that includes allegations of sexual assault. Dkt. 25 ¶ 19; *Benson*, 702 S.W.3d at 786.

**D.  Schunk's Motion for More Definite Statement**

Rule 12(e) permits a defendant to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Unlike a Rule 12(b)(6) motion, a Rule 12(e) motion is committed to the sound discretion of a trial judge. *Collins v. Chase Bank, N.A.*, No. SA-25-CV-00089-XR, 2025 WL 890184, at *2 (W.D. Tex. March 12, 2025) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)).

In addition to sexual assault, Misrendino alleges that Schunk falsely accused him of "psychological and domestic abuse, stalking and harassment . . . and threats of blackmail." Dkt. 25 ¶ 18. He alleges that Schunk's statements "clearly do not support the allegations she levied," but provides mostly one-to three-word quotes of "additional false statements" from her 90-minute livestream. *Id.* ¶¶ 19-20. Misrendino provides no context surrounding Schunk's statements, and the citations to these short quotes do not align with timestamps on the transcript Schunk submitted (Dkt. 39-3). This Magistrate Judge recommends that the District Court grant Schunk's alternative

motion for more definite statement and order Misrendino to identify (1) the exact quotes from her livestream he alleges to be defamatory, (2) how they are untrue, and (3) how they harm him.

### E. Hoyt's Motion to Dismiss

To support his defamation claim against Hoyt, Misrendino alleges that since Schunk's livestream, "Hoyt has continuously defamed [Misrendino] on a near-daily basis." *Id.* ¶ 26. He specifically references only a livestream by Hoyt on October 26, 2025. Misrendino alleges, without providing direct quotes, that Hoyt made comments about other alleged sexual assaults, affirmed the truth of Schunk's statements, claimed Misrendino was involved in another act of misconduct, and falsely accused Misrendino of threatening Schunk's employees. *Id.* ¶¶ 28-31. He also lists a series of short quotes from the same livestream with timestamps, but again offers no context surrounding the statements, no video, and no transcript. *Id.* ¶ 33.

None of Hoyt's statements Misrendino cites in his First Amended Complaint are "so obviously harmful" as to arise to defamation per se. *Williams*, 2025 WL 2393363, at *12. Without context, the Court cannot evaluate the "gist" of Hoyt's alleged statements. "[I]t is not the Court's duty to scour the record to find support of a party's allegations." *Yue v. Reaction Labs, LLC*, No. 1:24-CV-1125-RP, 2025 WL 1954063, at *10 (W.D. Tex. July 7, 2025) (citation omitted). Because Misrendino does not clearly allege which statements by Hoyt are defamatory and provide relevant context, the Court cannot analyze whether the statements are "reasonably capable of a defamatory meaning." *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 528 (W.D. Tex. 2021). For these reasons, the Court recommends that the claim against Hoyt be dismissed without prejudice.

### V.   Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court:

- **GRANT** Defendants OTK, Mythic, and King's Motion to Compel Arbitration and Stay Litigation (Dkt. 17);

11

- **STAY** litigation of Counts One and Three of Plaintiff's First Amended Complaint as to all Defendants pending arbitration;

- **DENY** Defendant Emily Beth Schunk's Motion to Dismiss First Amended Complaint (Dkt. 39);

- **ORDER** Misrendino to submit a More Definite Statement within 30 days identifying each statement by Schunk he alleges to be defamatory, including (1) the exact quotes from her livestream, (2) how each statement is untrue, and (3) how it harms him; and

- **GRANT** Defendant Zack Hoyt's Amended Motion to Dismiss (Dkt. 32) and **DISMISS without prejudice** Count Two of the First Amended Complaint against Hoyt.

The Court **FURTHER ORDERS** the Clerk to remove this case from this Magistrate Judge's docket and return it to the docket of the Honorable Robert Pitman.

## VI.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 15, 2026.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

12